Sullivan,
No. 5075.

ARTHUR JACOBSON & a. v. YOKEN'S, INC.

Argued October 2, 1962.

Decided November 30, 1962.

*William E. Nolin* and *McLane, Carleton, Graf, Greene & Brown* and *G. Marshall Abbey* (*Mr. Abbey* orally), for the plaintiffs.

*Devine, Millimet & McDonough* (*Mr. Shane Devine* orally), for the defendant.

WHEELER, J. The chief contention of the defendant is that there was insufficient evidence to submit the question of the plaintiff's negligence to the jury, and that its motions for non-suits and directed verdicts should have been granted. Taking the evidence most favorable to the plaintiff, it could be found that the plaintiff was injured while attending a regional meeting of Hadassah, a Zionist women's organization at Yoken's restaurant at Portsmouth, arrangements for which had been made the previous March. The meeting was scheduled to commence around ten A. M. with a coffee hour followed by a business meeting, luncheon and speaking. The registration fee for each member present was two dollars, out of which the defendant received one dollar and a quarter for the coffee hour, luncheon and use of the premises, and Mrs. Yoken was credited with a contribution of the balance to Hadassah.

The plaintiff arrived at Yoken's with a woman companion around ten A. M. and waited outside for two other ladies to arrive in another car. They then entered the restaurant, paid the registration fee at the door and were informed that coffee and cakes were being served in the rear of the "Spouter Room." At the time forty to fifty women were in the room moving about drinking coffee and eating cakes. This room was divided with a waist-high room divider, one side of which was set up with tables and chairs for the luncheon. The other side was set up with a head table and chairs for the business meeting.

The ladies proceeded down the aisle to the rear of the room in single file with the plaintiff's daughter leading, followed by the plaintiff. When about half way across the room the plaintiff's daughter felt herself sliding and turned and warned her mother. The plaintiff then felt herself slipping, grabbed a chair and fell to the floor on her right side. There was coffee and cream on the floor where she fell and there was an oval stain on the right side of the plaintiff's skirt after the fall. There were no employees of the defendant assigned to the room at the time except Mrs. Clarice Yoken, one of the principal stockholders of the defendant and an active member of Hadassah. During the coffee hour Mrs. Yoken was in and out of the room attending to making the coffee and supplying the serving tables. She normally acts as "hostess and all around helper" in the restaurant. Tables and chairs were not provided for the guests at the coffee hour.

The floor in the "Spouter Room" is of hard maple. It was

sanded in 1958 and two coats of Hillyard's "Trophy Gym Finish" was applied. The floor was thereafter cleaned once a week with a product called "Super Shine-All" and spot washed as needed. It had been cleaned the day before the accident. It was established that when thus treated and after drying the floor surface more than met the minimum standards of slip resistance, but when wet with coffee and cream it would not. If wet it became a solution of synthetic detergent and "would be dangerously slippery. A person would be liable to fall upon it."

The "Spouter Room" when in regular operation seats 165 to 175 people and normally is staffed with two to three bus boys and ten waitresses. The defendant's manager testified that "Shine-All" was a "soaping product." The defendant's knowledge and experience concerning substances spilled on the floor appeared from the following testimony of the manager: "Q. [Mr. Brown] . . . Isn't it the fact that with the number of people that are in that room when you are open, eating, that it is a daily occurrence of food or liquid getting on that floor, staining it, requiring cleaning? A. [Mr. McLeod] I suppose it could be, but we clean it up if something does happen. When we are operating we have those accidents. The minute that happens we stop everything, get a bus boy, he gets cloths or a mop and cleans it. Q. [Mr. Brown] As soon as it comes to your attention? A. [Mr. McLeod] Immediately. Q. [Mr. Brown] You don't leave the floor wet? A. [Mr. McLeod] No. Q. [Mr. Brown] Why not? A. [Mr. McLeod] Afraid of someone having an accident."

The extent of the defendant's duty depended on the nature of the relationship existing between the parties at the time of the accident. The Court submitted to the jury the question of whether the plaintiff was an invitee or a licensee and carefully instructed them as to the law applicable in each case. No exception was taken to the charge.

The status of the plaintiff was that of invitee if she was using the premises for the common interest and mutual advantage of both the user and owner. Sandwell v. Elliott Hospital, 92 N. H. 41, 43. If the plaintiff was on the premises for her own personal benefit she was a bare licensee or a gratuitous licensee to whom no duty is owed as to the condition of the premises except to warn of dangers actually known by the defendant and not open to ordinary observation by the plaintiff. Sandwell v. Elliott Hospital, supra. As bearing on this point the evidence was not

in dispute that the plaintiff had been active in the Hadassah organization for some time, that each lady attending the meeting paid a two-dollar registration fee of which Hadassah retained seventy-five cents for the benefit of the organization credited as a contribution from one of the defendant's principal stockholders and remitted the balance of one dollar and a quarter to the defendant. From this and other evidence the jury could find that the defendant was compensated not only for the luncheon but also for the coffee and equipment which it furnished as well as the services of Mrs. Yoken and the use of the premises during the coffee hour. The evidence warranted a finding that the use of the premises on the day of the accident was to the mutual advantage of both the plaintiff and defendant, and that the plaintiff's status was that of an invitee or business visitor.

The Court properly withdrew from the consideration of the jury as an issue of negligence the claim that there was a foreign substance on the floor for a sufficient period of time to afford notice of its presence to the defendant and opportunity to remove it. Consequently in order to go to the jury evidence was required that the defendant failed to perform its duty to an invitee to use care to make its premises reasonably safe (*Monier* v. *Belzil*, 97 N. H. 176) and to carry on its activities with reasonable care. "It is established law that a possessor of real estate is subject to liability for harm caused to business invitees upon the premises, if the harm results either from the possessor's failure to carry on his activities with reasonable care or from his failure to remedy or to give warning of a dangerous condition of which he knows or in the exercise of reasonable care should know." *Partin* v. *A & P Tea Co.*, 102 N. H. 62, 63, 64, and cases cited.

When the plaintiff entered the premises forty to fifty women were moving around drinking coffee and eating cake. Although the risk of spillage and of injury from the slippery condition which would result was known to the defendant, no employee of the defendant was present in the room except Mrs. Yoken who was in and out from time to time supplying coffee and cake. No tables or chairs were provided for guests at the coffee hour. Under normal operating conditions at least two bus boys and ten waitresses were employed in the room. While the question of knowledge on the part of the defendant that coffee and cream had been spilled was withdrawn from the jury, the issue remained as to whether the defendant exercised reasonable care to guard

against the risk of injury as a result of spillage on the floor. *Williamson* v. *Company*, 89 N. H. 216. The fact that coffee was spilled by one or more of the guests rather than an employee of the defendant would not relieve the defendant of its duty to exercise care. *Blackman* v. *Rowe*, 96 N. H. 207. The question of whether the defendant exercised reasonable care was properly submitted to the jury.

The other exceptions transferred have not been briefed or argued and are therefore understood to be waived.

*Judgment on the verdicts.*

KENISON, C. J., did not sit; the others concurred.