# MAUREEN KELLY ET AL. *v.* STOP AND SHOP, INC.
## (SC 17404)

Norcott, Katz, Palmer, Vertefeuille, Zarella, DiPentima and McLachlan, Js.[1]

[1] This case originally was argued before a panel of this court consisting of Justices Borden, Katz, Palmer, Vertefeuille and Zarella. Thereafter, the court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Accordingly, former Chief Justice Sullivan and Justice Norcott were added to the panel. Thereafter, former Chief Justice Sullivan and Justice Borden were disqualified from the case, and Judges DiPentima and McLachlan of the Appellate Court were added to the panel. They have read the record, briefs and transcript of oral argument.

Argued February 7, 2006—officially released April 3, 2007

*Steven D. Ecker,* with whom, on the brief, were, *James R. Smart, Michael A. Stratton, Joel T. Faxon* and *Michael R. Denison,* for the appellant (named plaintiff).

*Suzannah K. Nigro,* for the appellee (defendant).

*Opinion*

PALMER, J. The principal issue raised by this appeal is whether this court should adopt the so-called "mode of operation" rule, a rule of premises liability pursuant to which a business invitee who is injured by a dangerous condition on the premises may recover without proof that the business had actual or constructive notice of that condition if the business' chosen mode of operation creates a foreseeable risk that the condition regu-

larly will occur and the business fails to take reasonable measures to discover and remove it. The named plaintiff,[2] Maureen Kelly, commenced this action against the defendant, Stop and Shop, Inc., seeking compensation for injuries that she had sustained when, due to the defendant's alleged negligence, she slipped and fell on a piece of lettuce that had fallen to the floor from the self-service salad bar of a supermarket owned and operated by the defendant in Fairfield. After a bench trial, the trial court found that the plaintiff had failed to meet her burden of establishing that the defendant had actual or constructive notice of the piece of lettuce and, on that basis, rendered judgment for the defendant. On appeal,[3] the plaintiff contends that the trial court improperly declined to consider her claim of liability under the mode of operation rule. We agree with the plaintiff that this court should adopt the mode of operation rule and, therefore, reverse the judgment of the trial court.

The following evidence was adduced at trial. At approximately 11:30 a.m., on November 2, 1999, the plaintiff arrived at the defendant's supermarket in Fairfield to purchase groceries and to make herself a salad for lunch. Upon entering the store, she secured a shopping cart and went directly to the self-service salad bar located near the produce and floral departments of the store. The salad bar was surrounded on both sides by a narrow floor runner, approximately two to three feet wide, on which patrons stood while they served themselves. The floor itself was made of tile or linoleum. The salad bar had no railings and was framed by a four

---

[2] Larry Kelly, the named plaintiff's spouse, also was a plaintiff. He withdrew from the action, leaving the named plaintiff as the sole remaining plaintiff. In the interest of simplicity, we refer to Maureen Kelly as the plaintiff throughout this opinion.

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

inch ledge that was too narrow to accommodate trays or containers. As a result, patrons customarily would hold their containers aloft, over the floor area, while serving themselves from the salad bar. The plaintiff parked her shopping cart alongside the salad bar, picked up an aluminum container and filled it with cottage cheese and fruit. When she was finished, she turned to get a lid and, while doing so, stepped off the runner to get around her shopping cart. As she stepped onto the tile or linoleum floor, her left foot began to slide, causing both of her feet to kick up into the air and the aluminum container to be dislodged from her grasp. The plaintiff landed on her left shoulder.

While the plaintiff was lying on the floor following her fall, she observed a store employee, subsequently identified as Cecilia Stacey Bombero, cleaning the cottage cheese and fruit from around the plaintiff's feet. Another person helped the plaintiff up and then went to locate the store manager. While waiting for the manager to arrive, the plaintiff wiped off her shoes with a rag that she had obtained from Bombero. At that time, the plaintiff noticed "a wet, slimy piece of green lettuce" on the side of her shoe that, according to the plaintiff, had caused her to fall. The plaintiff, however, did not see any food or other substance on the floor near the salad bar before the accident.[4] The plaintiff also did not observe any store employees in the area of the salad bar before she fell.

The store manager, Nicholas J. Bishighini, arrived and asked the plaintiff if she was alright. The plaintiff responded that her shoulder hurt. Bishighini offered to

---

[4] In a written statement dated February 29, 2000, Bombero indicated that she had been at the salad bar on her lunch break at the time of the accident and had witnessed the plaintiff's fall. Bombero further stated that the plaintiff appeared to have fallen for no reason and that, as far as she could tell, there was nothing on the floor in the area where the plaintiff had been standing that would have caused her to fall.

call an ambulance, but the plaintiff declined. The plaintiff indicated that she had slipped and fallen on a piece of lettuce. Bishighini informed her that he would prepare an accident report that she could pick up the next day. The plaintiff tried to continue shopping but left the store shortly thereafter due to a throbbing pain in her left shoulder. As a consequence of her fall, the plaintiff tore her rotator cuff in her left shoulder. The injury causes the plaintiff to suffer chronic pain and has limited the plaintiff's ability to move her left shoulder and arm.[5]

According to Bishighini, the defendant's store policy called for at least one salad bar attendant to be on duty at all times. That attendant's job responsibilities included filling and maintaining the salad bar, and cleaning and patrolling the salad bar area. Typically, whenever the salad bar attendant took a break, another employee was assigned to cover the area until the attendant returned. Bishighini characterized the salad bar as "an area where people used to let . . . salads fall. It was precarious." As a consequence, Bishighini stated, "special porters" generally were stationed near the area of the salad bar.

Bishighini further explained that the defendant's store policy also required that a special report form be completed after any accident. The instructions on the front of the form provide in relevant part: "Answer all questions accurately, both sides. Have the employees fill out the reverse [side] independent of each other. Remember to sign and print your name on the bottom of this report. The maintenance report on the reverse side is to be filled out by the employee who last swept, cleaned and inspected [the area where the accident

---

[5] Although the plaintiff, a dental hygienist, could undergo surgery to repair her rotator cuff, she has declined that option because, inter alia, she cannot afford to be out of work for the protracted period of recuperation that would be necessary following such surgery.

occurred]. Call the accident into corporate insurance immediately after obtaining the information. It is essential that the sweeping log and all photographs be attached to the report of accident or injury." Additionally, the store maintained an employee safety manual that provides in relevant part: "The way a customer accident is handled could be the difference between winning a court case or reducing an award [and] losing a case or sustaining punitive damages. . . . When an accident occurs . . . [m]ake no statements to the injured individual. Do not make any remarks about our insurance. . . . Be courteous and helpful. If the injured individual says anything about responsibility, courteously inform [him or her] that the accident will be reported to the general office and an investigation will be made. . . . Make a personal detailed inspection of the area where the accident occurred with at least two other employees as witnesses. Secure names and addresses of customer and employee witnesses whenever possible. . . . Take photographs of the area where the accident occurred. . . . If a fall down . . . [take photographs of] the area of the fall down and any substance on the floor. (If no substance is there take a picture of the floor.) . . . When taking the information, use the Report of Accident or Injury Form. Bring this form down to the accident scene and take all information on-the-spot."

Notwithstanding these requirements, the accident report that was completed in connection with the plaintiff's fall was dated November 29, 1999, almost one month after the accident. Furthermore, the report contained no photographs or sweeping logs. The report did note, however, that the plaintiff had slipped "on [a] green [piece] of lettuce . . . ."

The following additional facts and procedural history are relevant to our resolution of this appeal. In her complaint, the plaintiff alleged, inter alia, that the defen-

dant negligently had allowed "pieces of wet lettuce" to accumulate on the floor in the vicinity of the salad bar, creating a dangerous and defective condition that had caused her to slip and fall. The plaintiff further alleged that the dangerous condition was the result of the defendant's method of displaying produce for consumption and that the defendant had failed to make reasonable inspections of the salad bar and the surrounding area in order to discover and remove that condition.

At the conclusion of the trial, the plaintiff urged the court to apply the mode of operation rule. Specifically, the plaintiff maintained that the evidence established that the salad bar was operated in such a manner that it was foreseeable that customers would spill or drop food from the salad bar to the floor below, thereby creating a dangerous condition. The plaintiff further claimed that, although it was the defendant's policy to inspect and clean the salad bar area routinely, the evidence indicated that the defendant failed to follow that policy. The plaintiff asserted, in particular, that the defendant's failure to provide sweeping logs and photographs with the accident report, as specifically required in the instructions accompanying the accident report form, gave rise to an inference that the floor surrounding the salad bar had not been swept or inspected in accordance with store policy.

In its memorandum of decision, the trial court concluded, in accordance with then controlling case law, that, because the plaintiff was a business invitee, she was required to prove that the defendant had actual or constructive notice of the piece of lettuce that allegedly had caused the plaintiff's fall. In view of the fact that the plaintiff's complaint did not allege that the defendant had actual notice of the piece of lettuce, the trial court focused exclusively on whether the plaintiff had established that the defendant had constructive notice of the condition. The trial court noted that, to establish

constructive notice, the plaintiff was required to adduce evidence sufficient to demonstrate that the lettuce had been on the floor long enough such that the defendant, in the exercise of reasonable care, should have discovered it. The trial court then concluded that, because the record was devoid of any evidence as to how long the piece of lettuce had been on the floor, the plaintiff's proof was inadequate to establish constructive notice, and, therefore, the defendant was entitled to judgment on that basis. In light of its determination regarding the requirement of actual or constructive notice and the plaintiff's failure to meet that requirement, the trial court did not address the plaintiff's claim regarding the mode of operation rule.

On appeal, the plaintiff does not challenge the trial court's finding that the evidence was insufficient to establish the defendant's constructive notice of the piece of lettuce on which she allegedly had slipped. Rather, she challenges the court's determination that she was required to prove that the piece of lettuce had been on the floor long enough to charge the defendant with constructive notice of its presence there. Specifically, the plaintiff maintains that the trial court improperly declined to consider her claim under the mode of operation rule, which allows a business invitee to recover for an injury sustained as a result of a dangerous condition on the premises of a business without a showing that the business had actual or constructive notice of that condition, if the condition was reasonably foreseeable and the business failed to take reasonable measures to discover and remove it. The plaintiff further contends that the evidence adduced at trial was sufficient to support a finding in her favor under that rule. We conclude that we should adopt the mode of operation rule and agree with the plaintiff that she adduced sufficient evidence at trial to support a finding in her favor under that rule.

We begin our analysis by setting forth the standard of review. "[T]he scope of our appellate review depends [on] the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Kelly* v. *New Haven*, 275 Conn. 580, 607, 881 A.2d 978 (2005). Because the plaintiff's sole claim on appeal is that the trial court applied the wrong legal standard to the facts, our review is plenary.

It is undisputed that the owner of a retail store has a duty to keep the premises in a reasonably safe condition for the benefit of its customers. See, e.g., *Baptiste* v. *Better Val-U Supermarket, Inc.*, 262 Conn. 135, 140, 811 A.2d 687 (2002). Recently, we reiterated the legal standard that this court ordinarily has applied to premises liability claims brought by business invitees: "Typically, [f]or [a] plaintiff to recover for the breach of a duty owed to [him] as [a business] invitee, it [is] incumbent upon [him] to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused [his injury] or constructive notice of it. . . . [T]he notice, whether actual or constructive, must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it. . . . In the absence of allegations and proof of any facts that would give rise to an enhanced duty . . . [a] defendant is held to the duty of protecting its business invitees from known, foreseeable dangers." (Citations omitted; internal quotation marks omitted.) Id.

"If the plaintiff, however, alleges an affirmative act of negligence, [that is], that the defendant's conduct created the unsafe condition, proof of notice is not necessary. . . . That is because when a defendant itself has created a hazardous condition, it safely may be inferred that it had knowledge thereof." (Citations omitted; internal quotation marks omitted.) *Meek* v. *Wal-Mart Stores, Inc.*, 72 Conn. App. 467, 474, 806 A.2d 546, cert. denied, 262 Conn. 912, 810 A.2d 278 (2002); see also *Tuite* v. *Stop & Shop Cos.*, 45 Conn. App. 305, 308–309, 696 A.2d 363 (1997); *Fuller* v. *First National Supermarkets, Inc.*, 38 Conn. App. 299, 301, 661 A.2d 110 (1995). When, however, the plaintiff does not allege either that the defendant's conduct created the unsafe condition or that the defendant had actual notice of the condition, we have stated that "[t]he controlling question [becomes] that of constructive notice: whether the condition had existed for such a length of time that the [defendant's] employees should, in the exercise of due care, have discovered it in time to have remedied it." *Morris* v. *King Cole Stores, Inc.*, 132 Conn. 489, 492–93, 45 A.2d 710 (1946). "What constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of a case. The nature of the business and the location of the foreign substance would be factors in this determination . . . ." Id., 494. "To a considerable degree each case must be decided on its own circumstances. Evidence which goes no farther than to show the presence of a slippery foreign substance does not warrant an inference of constructive notice to the defendant." Id.

The mode of operation rule, however, which the plaintiff urges us to adopt, "allows a customer injured due to a condition inherent in the way [a] store is operated to recover without establishing that the proprietor had actual or constructive knowledge of the dangerous condition." *Jackson* v. *K-Mart Corp.*, 251 Kan. 700, 702,

840 P.2d 463 (1992). The rule, which evolved in response to the proliferation of self-service retail establishments, is rooted in the theory that traditional notice requirements are unfair and unnecessary in the self-service context. "The modern self-service form of retail sales encourages . . . patrons to obtain for themselves from shelves and containers the items they wish to purchase, and to move them from one part of the store to another in baskets and shopping carts as they continue to shop for other items, thus increasing the risk of droppage and spillage." *Lanier* v. *Wal-Mart Stores, Inc.*, 99 S.W.3d 431, 435 (Ky. 2003); see also *Ciminski* v. *Finn Corp.*, 13 Wash. App. 815, 818, 537 P.2d 850 ("It is common knowledge that the modern merchandizing method of self-service poses a considerably different situation than the older method of individual clerk assistance. It is much more likely that items for sale and other foreign substances will fall to the floor."), review denied, 86 Wash. 2d 1002 (1975). "It is also common knowledge that modern merchandising techniques employed by self-service retail stores are specifically designed to attract a customer's attention to the merchandise on the shelves and, thus, away from any hazards that might be on the floor." *Lanier* v. *Wal-Mart Stores, Inc.*, supra, 436.

Thus, "modern-day supermarkets, self-service marts, cafeterias, fast-food restaurants and other business premises should be aware of the potentially hazardous conditions that arise from the way in which they conduct their business. Indeed, the very operation of many of these types of establishments requires that the customers select merchandise directly from the store's displays, which are arranged to invite customers to focus on the displays and not on the floors. . . . In each of these cases, the nature of the defendant's business gives rise to a substantial risk of injury to customers from slip-and-fall accidents . . . ." *Owens* v. *Publix Super-*

*markets, Inc.,* 802 So. 2d 315, 330–31 (Fla. 2001); see also *Wollerman* v. *Grand Union Stores, Inc.,* 47 N.J. 426, 429, 221 A.2d 513 (1966) ("since the patron's carelessness is to be anticipated in [a] self-service operation [involving open bins of vegetables], [the] defendant [supermarket was] liable, even without notice of the [vegetable's] presence on the floor, [when it] failed to use reasonable measures commensurate with the risk involved to discover the debris a customer might [have left] and to remove it before it injure[d] another patron").

The Vermont Supreme Court recently summarized the genesis and rationale of the mode of operation rule. "With the advent of self-service marketing operations in retail stores . . . courts across the country . . . began to modify premises liability law in various ways to reduce or eliminate [a plaintiff's] burden of proving that the store had actual or constructive notice of the defective condition. See *Jackson* v. *K-Mart Corp.,* [supra, 251 Kan. 705–10] (noting broad trend toward modifying premises liability law in retail establishments and discussing various ways in which traditional rule has been altered); see also *Owens* v. *Publix Supermarkets, Inc.,* [supra, 802 So. 2d 324–29] . . . (noting modern jurisprudential trend of departing from the traditional rule of premises liability when a plaintiff slips and falls on a transitory foreign substance, and discussing various approaches taken by different courts); *Cobb* v. *Skaggs Cos.,* [661 P.2d 73, 76 (Okla. App. 1982)] (noting that self-service marketing method has spawned a growing trend of cases that dispense with the traditional notice requirement in such business settings as discount department stores, restaurants, and supermarkets) . . . . In modifying the traditional rule, these courts reasoned that while self-service operations give store customers additional freedom to browse and select the merchandise they desire, they also pose fore-

seeable hazards to those customers, who are generally less careful than store employees in handling the merchandise. . . . Essentially, the courts have recognized that stores engaging in foreseeably hazardous self-service operations may be deemed to have constructive notice of those conditions when they result in injury." (Citations omitted; internal quotation marks omitted.) *Malaney* v. *Hannaford Bros. Co.*, 177 Vt. 123, 127–28, 861 A.2d 1069 (2004).

Consistent with the observation of the Vermont Supreme Court, some courts that have adopted the mode of operation rule have concluded that the owner of a self-service retail establishment reasonably may be deemed to have *constructive* notice of dangerous, transitory conditions that are likely to occur due to the manner in which the store is operated. See, e.g., *Blair* v. *West Town Mall*, 130 S.W.3d 761, 766 (Tenn. 2004) ("This approach focuses directly on a principle firmly established in [the] case law—that a premises owner's duty to remedy a condition, not directly created by the owner, is based on that owner's actual or constructive knowledge of the existence of the condition. It simply recognizes the logical conclusion that, when a dangerous condition occurs regularly, the premises owner is on constructive notice of the condition's existence. This places a duty on that owner to take reasonable steps to remedy this commonly occurring dangerous condition."); *Strack* v. *Great Atlantic & Pacific Tea Co.*, 35 Wis. 2d 51, 57–58, 150 N.W.2d 361 (1967) ("in circumstances [in which] there is a reasonable probability that an unsafe condition will occur because of the nature of the business and the manner in which it is conducted, then constructive knowledge of the existence of such an unsafe condition may be charged to the operator and such constructive notice does not depend [on] proof of an extended period of time within which a shop owner might have received knowledge of the condition in

fact"). Other courts, however, have reasoned that, by selling merchandise or food in a manner that gives rise to regularly occurring hazards, the store itself has created the risk and, therefore, reasonably may be deemed to have *actual* notice of the hazard. See, e.g., *Canfield* v. *Albertsons, Inc.*, 841 P.2d 1224, 1226 (Utah App. 1992) ("there is no logical distinction between a situation in which the storeowner directly creates the condition or defect, and where the store owner's method of operation creates a situation [in which] it is reasonably foreseeable that the expectable acts of third parties will create a dangerous condition or defect"), cert. denied, 853 P.2d 897 (Utah 1993); *Ciminski* v. *Finn Corp.*, supra, 13 Wash. App. 819 ("The logic of [the] rule is obvious if it is remembered that if a clerk or other employee has been negligent, the employer is charged with the responsibility of creating a dangerous condition. . . . In a self-service operation, an owner has for his pecuniary benefit required customers to perform the tasks previously carried out by employees. Thus, the risk of items being dangerously located on the floor, which previously was created by employees, is now created by other customers. But it is the very same risk and the risk has been created by the owner by his choice of mode of operation. He is charged with the creation of this condition just as he would be charged with the responsibility for negligent acts of his employees." [Citation omitted.]). Whether a self-service business is deemed to have constructive or actual notice of hazards that occur regularly due to the fact that its customers are expected to serve themselves, the fundamental rationale underlying the rule is the same: Because the hazard is a foreseeable consequence of the manner in which the business is operated, the business is responsible for implementing reasonable measures to discover and remedy the hazard.

Although this court previously has not had occasion to consider the mode of operation rule, at least twenty-

two of our sister states have adopted the rule or some variation thereof. See, e.g., *Chiara* v. *Fry's Food Stores of Arizona, Inc.*, 152 Ariz. 398, 400–401, 733 P.2d 283 (1987); *Safeway Stores, Inc.* v. *Smith*, 658 P.2d 255, 257 (Colo. 1983); *Owens* v. *Publix Supermarkets, Inc.*, supra, 802 So. 2d 330–31; *Gump* v. *Wal-Mart Stores, Inc.*, 93 Haw. 428, 441–45, 5 P.3d 418 (App. 1999), aff'd in relevant part and rev'd in part on other grounds, 93 Haw. 417, 5 P.3d 407 (2000); *McDonald* v. *Safeway Stores, Inc.*, 109 Idaho 305, 308, 707 P.2d 416 (1985); *Golba* v. *Kohl's Dept. Store, Inc.*, 585 N.E.2d 14, 15–16 (Ind. App. 1992); *Jackson* v. *K-Mart Corp.*, supra, 251 Kan. 710–11; *Lanier* v. *Wal-Mart Stores, Inc.*, supra, 99 S.W.3d 436–37; *Gonzales* v. *Winn-Dixie Louisiana, Inc.*, 326 So. 2d 486, 488–89 (La. 1976); *Dumont* v. *Shaw's Supermarkets, Inc.*, 664 A.2d 846, 848–49 (Me. 1995); *F. W. Woolworth Co.* v. *Stokes*, 191 So. 2d 411, 416–18 (Miss. 1966); *Sheil* v. *T.G. & Y. Stores Co.*, 781 S.W.2d 778, 780–82 (Mo. 1989); *Sprague* v. *Lucky Stores, Inc.*, 109 Nev. 247, 251, 849 P.2d 320 (1993); *Jacobsen* v. *Yoken's, Inc.*, 104 N.H. 331, 334–35, 186 A.2d 148 (1962); *Wollerman* v. *Grand Union Stores, Inc.*, supra, 47 N.J. 429–30; *Mahoney* v. *J. C. Penney Co.*, 71 N.M. 244, 260, 377 P.2d 663 (1962); *Lingerfelt* v. *Winn-Dixie Texas, Inc.*, 645 P.2d 485, 489 (Okla. 1982); *Blair* v. *West Town Mall*, supra, 130 S.W.3d 766; *Corbin* v. *Safeway Stores, Inc.*, 648 S.W.2d 292, 296–98 (Tex. 1983); *Canfield* v. *Albertsons, Inc.*, supra, 841 P.2d 1226–27; *Malaney* v. *Hannaford Bros. Co.*, supra, 177 Vt. 132; *Pimentel* v. *Roundup Co.*, 100 Wash. 2d 39, 49–50, 666 P.2d 888 (1983); *Steinhorst* v. *H. C. Prange Co.*, 48 Wis. 2d 679, 683–84, 180 N.W.2d 525 (1970); *Buttrey Food Stores Division* v. *Coulson*, 620 P.2d 549, 552–53 (Wyo. 1980). A number of courts have rejected the mode of operation rule. See, e.g., *Richardson* v. *Kroger Co.*, 521 So. 2d 934, 937–38 (Ala. 1988); *Maans* v. *Giant of Maryland, LLC*, 161 Md. App. 620, 638, 871 A.2d 627, cert. denied,

388 Md. 98, 879 A.2d 43 (2005); *Wintersteen* v. *Food Lion, Inc.*, 344 S.C. 32, 35–36, 39, 542 S.E.2d 728 (2001); *Winn-Dixie Stores, Inc.* v. *Parker*, 240 Va. 180, 183 n.3, 396 S.E.2d 649 (1990). There is, however, a distinct modern trend favoring the rule, and it appears that most courts that have considered the rule have adopted it.

Indeed, in *Meek* v. *Wal-Mart Stores, Inc.*, supra, 72 Conn. App. 476–79, the Appellate Court recently employed a mode of operation analysis in the context of a claim arising out of the alleged negligence of a large, self-service department store. In *Meek*, the named plaintiff, Jeffrey Meek, was injured when two boxes containing aluminum folding camp tables fell on him while he was shopping at a Wal-Mart store in Waterford. Id., 469. Meek brought an action against Wal-Mart Stores, Inc. (Wal-Mart), and certain of its employees, claiming, inter alia, that Wal-Mart or its employees negligently had failed to secure the tables to the shelf on which they were displayed. Id., 470–71. A jury returned a verdict in favor of Meek, and Wal-Mart appealed. Id., 471–72. On appeal, Wal-Mart argued that the evidence was inadequate to establish that the manner in which the tables had been stacked for display constituted a dangerous condition. Id., 473. In particular, Wal-Mart maintained that it could not be held responsible for the accident because the evidence indicated that another customer had caused the tables to be moved into a position in which they were vulnerable to toppling. Id.

The Appellate Court rejected this claim, concluding that the evidence was sufficient to permit a finding that Wal-Mart and its employees had been negligent in stacking the boxes in the manner they did because it was foreseeable that the boxes could be dislodged by customers with only minimal inspection or handling. Id., 479. In reaching its conclusion, the Appellate Court noted, first, that when a business invitee alleges that her injuries were caused by an unsafe condition created

by the business itself, proof that the business had actual or constructive notice of that unsafe condition is not necessary because, in such circumstances, knowledge of the condition reasonably may be inferred. Id., 474. The Appellate Court further explained that, "[w]hether a storekeeper has displayed merchandise in an unsafe manner such that injury to customers is foreseeable is for the fact finder to determine and is to be answered by considering all of the surrounding circumstances. . . . The merchant must use reasonable care in placing goods on the store shelves. Merchandise must not be stacked or placed at such heights, widths, depths, or in such locations which would make it susceptible to falling. . . .

"Injuries also may result indirectly from a proprietor's defective or negligent display of merchandise that nonetheless are wholly to be expected from the store's mode of operation and may be taken into account by the fact finder when it considers whether the method of display was unsafe. Thus, one of the factors to be considered in establishing and maintaining a display in a department store is that the merchandise is going to be inspected by the customers. A merchandise display constructed so that an inspection by a customer, in a foreseeable and reasonable manner, causes the merchandise to fall, is a negligently constructed display. . . .

"The concept is no less applicable [when] it is the foreseeable action of another customer who rendered the display dangerous to the injured plaintiff." (Citations omitted; internal quotation marks omitted.) Id., 476–77. In other words, *there is no logical distinction between a situation in which the storeowner directly creates the condition or defect, and where the storeowner's method of operation creates a situation [in which] it is reasonably foreseeable that the expectable acts of third parties will create a dangerous condition or defect.*" (Emphasis added.) Id., 478.

Although the Appellate Court did not expressly adopt the mode of operation rule in *Meek*, the analysis and reasoning employed in that case is no different from the analysis and reasoning that the court would have used if it explicitly had adopted the mode of operation rule. As the Appellate Court stated, "[w]here the storekeeper operates under a self-service system, he must take into account the possibility of shoppers disarranging the merchandise and possibly leaving it in a dangerous condition; therefore, [when] a storekeeper has no basis for believing that customers will discover a dangerous condition or realize the risk involved, he is under a duty to exercise ordinary care either to make the condition reasonably safe for their use or to give a warning adequate to enable them to avoid the harm." (Internal quotation marks omitted.) Id., 477–78. Indeed, the Appellate Court specifically noted that this principle "frequently has been applied in cases involving slip and fall accidents in self-service establishments that were caused by the foreseeable behavior of other customers dropping or spilling merchandise on the floor." Id., 478 n.6. Consequently, we agree with the plaintiff that *Meek* lends considerable support to her contention that she was entitled to consideration of her claim under the mode of operation rule.[6]

---

[6] *Meek* demonstrates the close relationship between a defendant's affirmative act of negligence, which obviates the need for a business invitee to establish that the defendant had actual or constructive notice of a dangerous condition on the premises, and a defendant's liability to a business invitee under the mode of operation rule, pursuant to which notice of the dangerous condition also is unnecessary. With respect to the former, proof of notice is not required because the defendant is presumed to be on notice of the conduct of its own employees; with respect to the latter, proof of notice is unnecessary because the defendant is presumed to be on notice of the foreseeable conduct of its customers in view of its manner of operation. Thus, in both cases, notice is not required because the defendant reasonably may be deemed to have created the unsafe condition, either directly, as in the case of an affirmative act of negligence, or indirectly, as in the case of foreseeable conduct by a customer acting in accordance with the proprietor's self-service method of operation.

For several reasons, we also agree with the plaintiff that the mode of operation rule provides the most fair and equitable approach to the adjudication of premises liability claims brought by business invitees seeking compensation for injuries arising out of a business owner's self-service method of operation. First, "[i]n a self-service operation, an owner has for his pecuniary benefit required customers to perform the tasks previously carried out by employees." *Ciminski* v. *Finn Corp.*, supra, 13 Wash. App. 819; *Sheil* v. *T. G. & Y. Stores Co.*, supra, 781 S.W.2d 781 (same). Although such businesses stand to realize savings from their self-service manner of operation, this merchandising technique also provides "increased opportunities for the creation of myriads of potential new hazards to customers, caused not only by the [commercial entity's] own employees, but by other customers as well." 1 N. Landau & E. Martin, Premises Liability Law and Practice (2002) § 8A.03 [4]. In such circumstances, "[t]he measures taken by large, self-service retail merchandising establishments to protect their invitees must be commensurate with the risks inherent in that method of store operation. . . . [Thus] [a]ny economic loss resulting from the avoidance of those risks, if it exists, should be borne by such commercial enterprises as a cost of doing business." (Citations omitted; internal quotation marks omitted.) *Meek* v. *Wal-Mart Stores, Inc.*, supra, 72 Conn. App. 481. In other words, because self-service businesses are likely to achieve savings by virtue of their method of operation, it is appropriate to hold them responsible for injuries to customers that are a foreseeable consequence of their use of that merchandising approach *unless* they take reasonable precautions to prevent such injuries.

Second, the essential premise of the rule requiring a business invitee to prove actual or constructive notice of the unsafe condition is incompatible with the self-service method of operation. Actual or constructive

notice is required because, as a general matter, it is unfair to hold a storeowner liable for injuries to customers resulting from an unsafe condition unless the storeowner knew or should have known of that unsafe condition. Self-service businesses, however, are aware that some customers will be injured due to the conduct of other customers because such injuries are a likely, and therefore foreseeable, consequence of the self-service method of operation. Thus, as the Colorado Supreme Court has explained, "[t]he basic notice requirement springs from the [notion] that a dangerous condition, when it occurs, is somewhat out of the ordinary. . . . In such a situation the storekeeper is allowed a reasonable time, under the circumstances, to discover and correct the condition, unless it is the direct result of his (or his employees') acts. However, when the operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable, the logical basis for the notice requirement dissolves. Then, actual or constructive notice of the specific condition need not be proved." (Citations omitted.) *Jasko* v. *F. W. Woolworth Co.*, 177 Colo. 418, 420–21, 494 P.2d 839 (1972); accord *Gump* v. *Wal-Mart Stores, Inc.*, supra, 93 Haw. 443–44; *Pimentel* v. *Roundup Co.*, supra, 100 Wash. 2d 47–48; see also S. Winegar, Comment, "Reapportioning the Burden of Uncertainty: Storekeeper Liability in the Self-Service Slip-and-Fall Case," 41 UCLA L. Rev. 861, 869–70 (1994) ("[I]t appears that the self-service method of operation in retail businesses is . . . a modern development. . . . This . . . suggests that the traditional rule of premises liability emerged when courts were either unaware of the higher tort risk associated with self-service businesses, or unwilling to craft a rule of liability that distinguished between self-service businesses and their clerk-service counterparts. Arguably, a modern rule of premises liability ought to account for the special

risks inherent in self-service merchandising. Modern supermarkets are busy by design, with employees as well as customers handling merchandise. As a consequence, there is a greater likelihood that foreign objects will fall to the floor in these self-service businesses because of the carelessness of a storekeeper's employees or customers.").

Third, the requirement of actual or constructive notice places a difficult—and frequently insuperable—burden on injured customers to establish when the unsafe condition arose. "An injured customer is often at a decided disadvantage in determining what has happened. The fall victim may be dazed, helpless and friendless, unable to interview bystanders or to observe the scene carefully. The store [on the other hand] is able to make an immediate investigation, interviewing witnesses and diagramming the scene. Relative availability of evidence to the parties is a circumstance to be considered in determining what should be required for making a submissible case." *Sheil* v. *T.G. & Y. Stores Co.*, supra, 781 S.W.2d 782; see also *Owens* v. *Publix Supermarkets, Inc.*, supra, 802 So. 2d 330 ("premises owners are in a superior position to establish that they did or did not regularly maintain the premises in a safe condition and they are generally in a superior position to ascertain what occurred by making an immediate investigation, interviewing witnesses and taking photographs"); *Wollerman* v. *Grand Union Stores, Inc.*, supra, 47 N.J. 430 ("[When] a substantial risk of injury is implicit in the manner in which a business is conducted, and . . . it is fairly probable that the operator is responsible either [for] creating the hazard or permitting it to arise or to continue, it would be unjust to saddle [a] plaintiff with the burden of isolating the precise failure. The situation being peculiarly in the defendant's hands, it is fair to call [on] the defendant to explain, if he wishes to avoid an inference by the trier of the facts that the fault

probably was his."); *Malaney* v. *Hannaford Bros. Co.,* supra, 177 Vt. 132 ("the modification of premises liability law in slip-and-fall cases involving self-service retail stores . . . was aimed largely at relieving plaintiffs of the nearly insurmountable burden of proving exactly . . . how long the dangerous condition had existed").

Finally, the mode of operation rule is most consistent with "the general rule that every person has a duty to use reasonable care not to cause injury to those whom he reasonably could foresee to be injured by his negligent conduct, whether that conduct consists of acts of commission or omission."[7] *Gazo* v. *Stamford,* 255 Conn. 245, 251, 765 A.2d 505 (2001). More specifically, the rule encourages self-service businesses to "exercise reasonable care in their dealings with customers . . . [by] assigning liability as accurately as possible to those parties that reasonably may foresee harm on their premises." *Monk* v. *Temple George Associates, LLC,* 273 Conn. 108, 121 n.11, 869 A.2d 179 (2005). By contrast, a rule requiring proof that a self-service enterprise had actual or constructive notice of an unsafe, transitory condition caused by the foreseeable conduct of a customer would provide little incentive for such an enterprise to adopt and implement policies designed to prevent injuries stemming from that unsafe condition because actual or constructive notice frequently is so difficult to prove. See, e.g., S. Winegar, supra, 41 UCLA L. Rev. 862 ("[m]any courts have recognized that [the traditional notice] requirements can be tremendously

---

[7] As the Restatement (Second) of Torts provides, "[a] possessor of land who holds it open to the public is under a duty to members of the public who enter in response to his invitation." 2 Restatement (Second), Torts § 314A (3), p. 118 (1965). The duty "arise[s] out of special relations between the parties, which create a special responsibility . . . ." Id., § 314A, comment (b), p. 119. This "duty to protect the other against unreasonable risk of harm extends to risks arising . . . from the acts of third persons, whether they be innocent, negligent, intentional, or even criminal." Id., comment (d).

difficult to satisfy if the condition causing the fall was temporary or transitory").

The defendant contends that the mode of operation rule effectively makes self-service businesses strictly liable for injuries to their customers. We disagree with this assertion. On the contrary, "it must be emphasized that 'a store owner is not an insurer of its customers' safety. Certainly, [when] . . . a customer is injured by an independent act of negligence which the merchant cannot reasonably be expected to foresee or guard against, the merchant is not liable. However, ordinary and foreseeable activities of patrons, not amounting to independent acts of negligence, should not result in injury to fellow patrons or themselves; and a merchant is negligent if he has so arranged his merchandise that such activities can cause merchandise to fall resulting in injury.' "[8] *Meek* v. *Wal-Mart Stores, Inc.*, supra, 72

[8] We recognize that the mode of operation rule has been criticized because, under the rule, a defendant potentially may be held liable for the plaintiff's injuries even though the defendant's negligence was not the cause of those injuries. Indeed, one court recently has stated that, "[d]oing away with the requirement that the invitee must prove how long the dangerous condition existed pre-injury is the functional equivalent of doing away with the requirement that the plaintiff prove that the defendant's negligence was the proximate cause of the plaintiff's injury. . . . Without 'time on the floor' evidence, the storekeeper would be potentially liable even though there is no way of telling whether there was anything [the storekeeper] could have done that would have avoided the injury." *Maans* v. *Giant of Maryland, LLC*, supra, 161 Md. App. 640. We acknowledge that this criticism of the rule has some validity. Therefore, if a storekeeper can establish to the satisfaction of the fact finder that its negligence was not a cause in fact of the accident—for example, in the present case, if the defendant can demonstrate that the piece of lettuce on which the plaintiff allegedly slipped had fallen to the floor only moments before the plaintiff's accident—we see no reason why the storekeeper should be held liable notwithstanding proof that the storekeeper had failed to take appropriate measures to prevent such accidents generally. We also conclude, however, that a defendant who fails to take reasonable precautions to avoid dangers likely to arise from its self-service method of operation should bear the burden of demonstrating that its failure to take such precautions was not a proximate cause of any injuries resulting from those foreseeable dangers.

Conn. App. 478–79, quoting *Fleming* v. *Wal-Mart, Inc.*, 268 Ark. 559, 564, 595 S.W.2d 241 (App. 1980). In other words, under the mode of operation rule, a proprietor of a self-service retail operation "is [negligent] only if he fails to use reasonable care under the circumstances to discover the foreseeable dangerous condition and to correct it or to warn customers of its existence. . . . [I]t is unrealistic to require the victim of a fall resulting from a dangerous condition in a self-service grocery store to present evidence of the absence of reasonable care by the storekeeper. . . . The steps the store-keeper took to discover the condition and to correct or warn of it are peculiarly within his own knowledge." (Citations omitted.) *Safeway Stores, Inc.* v. *Smith*, supra, 658 P.2d 258; see also *Ciminski* v. *Finn Corp.*, supra, 13 Wash. App. 823 ("Requiring the owner of a self-service operation to exercise reasonable care in protecting his business invitees from the foreseeable risks of his method of doing business does not make such owner an insurer of those on his premises. If [the owner] has taken all precautions reasonably necessary to protect his invitees from injury, he is not liable merely because someone is injured on his property.").

To summarize, a plaintiff establishes a prima facie case of negligence upon presentation of evidence that the mode of operation of the defendant's business gives rise to a foreseeable risk of injury to customers and that the plaintiff's injury was proximately caused by an accident within the zone of risk. The defendant may rebut the plaintiff's evidence by producing evidence that it exercised reasonable care under the circumstances. Of course, the finder of fact bears the ultimate responsibility of determining whether the defendant exercised such care. We underscore, "as most other courts have, that the defendant's burden in such cases is one of production, and that the ultimate burden of persuasion to prove negligence—in other words, that

the defendant failed to take reasonable steps to address a known hazard—remains with the plaintiff." *Malaney* v. *Hannaford Bros. Co.*, supra, 177 Vt. 132; see also *Chiara* v. *Fry's Food Stores of Arizona, Inc.*, supra, 152 Ariz. 401 ("[I]t [is] clear that the burden of proof in a mode-of-operation case is no different from the burden of proof in any other negligence case. . . . The plaintiff must still come forward with evidence supporting his case. He bears the burden of persuading the jury that the defendant acted unreasonably." [Citation omitted.]); *Nisivoccia* v. *Glass Gardens, Inc.*, 175 N.J. 559, 564–65, 818 A.2d 314 (2003) ("[t]he plaintiff is entitled to an inference of negligence, shifting the burden of production to the defendant, who may avoid liability if [he] shows that [he] did all that a reasonably prudent man would do in the light of the risk of injury [the] operation entailed" [internal quotation marks omitted]).

Thus, the plaintiff always bears the burden of establishing negligence under the mode of operation rule. In other words, although the plaintiff will make out a prima facie case upon the presentation of evidence from which the fact finder reasonably could find that the defendant's self-service mode of operation gave rise to a foreseeable risk of injury to customers and that the plaintiff's injury was proximately caused by an accident within the zone of risk, the fact finder is not obliged to conclude that the defendant was negligent. Rather, the fact finder is free to find either that the plaintiff's evidence is sufficient to establish negligence by the defendant or that the plaintiff's evidence is insufficient to establish negligence. If the fact finder were to find that the plaintiff's evidence was sufficient to establish negligence, and the defendant presented no evidence, then the fact finder presumably would find in favor of the plaintiff. The defendant, however, is free to adduce evidence, in response to the plaintiff's evidence, that it undertook reasonable measures to avoid accidents like

the accident that resulted in the plaintiff's injury. If the defendant presents such evidence, the burden is on the plaintiff to establish that the steps taken by the defendant to prevent the accident were not reasonable under the circumstances.

Applying the foregoing rule to the present case, we conclude that the plaintiff adduced evidence sufficient to establish a prima facie case of negligence by the defendant. Specifically, Bishighini, the store manager, testified that the area around the salad bar was "precarious" because customers regularly caused items from the salad bar to fall to the floor below. Indeed, because the defendant knew of the dangers associated with maintaining a self-service salad bar, the defendant had a policy of stationing an attendant at the salad bar for the purpose of keeping the area clean and safe. Moreover, the plaintiff testified that she fell when she slipped on a "wet, slimy piece of . . . lettuce" while she was making a salad at the salad bar. This evidence was adequate to permit a finding that the salad bar created a foreseeable risk of danger to customers; see *Nisivoccia* v. *Glass Gardens, Inc.*, supra, 175 N.J. 565 ("A location within a store where a customer handles loose items during the process of selection and bagging from an open display obviously is a self-service area. A mode-of-operation charge is appropriate when loose items that are reasonably likely to fall to the ground during customer or employee handling would create a dangerous condition."); and that the plaintiff's fall had resulted from that dangerous condition. Furthermore, although the defendant's policy required both that a maintenance report be completed by the employee who had "last swept, cleaned and inspected" the area where the accident occurred and that all relevant photographs and sweeping logs be appended to the accident report, the defendant failed to comply with those directives. The plaintiff correctly asserts that the defendant's

inability to produce the information required by its own guidelines permits an inference that the area had not been swept, cleaned or inspected in accordance with the defendant's store policies. Finally, according to the plaintiff, there were no porters or attendants in the vicinity of the salad bar while she was serving herself at the salad bar. Under the circumstances, therefore, a fact finder reasonably could have concluded that the plaintiff had slipped and fallen due to the defendant's failure to take adequate precautions in connection with its operation of the salad bar.[9]

The judgment is reversed and the case is remanded for a new trial.

In this opinion NORCOTT, KATZ, VERTEFEUILLE and DiPENTIMA, Js., concurred.

ZARELLA, J., with whom McLACHLAN, J., joins, concurring. I agree with the result reached by the majority. I also agree with the majority that this court should reconsider its approach to premises liability law in cases involving self-service commercial establishments in which the plaintiff alleges that the mode of operation created a foreseeable risk of harm.[1] I write separately,

---

[9] The mode of operation rule that we adopt today shall be applied to all future cases and, as a general rule, to all previously filed cases in which the trial has not yet commenced as of the date of the release of this opinion. With respect to the latter category of cases, the trial court shall have discretion to bar invocation of the rule if there is an overriding reason to do so. In determining whether such a reason exists, the court may consider, among other things, any delay in the trial of the case that may be occasioned by allowing the plaintiff to raise a claim under the mode of operation rule (for purposes of additional discovery or otherwise), the length of time that the case has been pending and its proximity to trial.

[1] I do not agree, however, with one of the majority's principal reasons for its reconsideration. The majority states that, "because self-service businesses are likely to achieve savings by virtue of their method of operation, it is appropriate to hold them responsible for injuries to customers that are a foreseeable consequence of their use of that merchandising approach unless they take reasonable precautions to prevent such injuries." This rationale assumes that any savings realized by the owner of a self-service

however, to emphasize that the mode of operation rule that the majority articulates does not presume that all self-service operations are inherently dangerous and, therefore, does not relieve a plaintiff of the burden of proving that the self-service operation in question gave rise to a foreseeable risk of injury to its customers.[2]

Applying the mode of operation rule in the present case, I emphasize that the focus of the analysis is not on how long the piece of lettuce was on the floor but on whether the design or operation of the salad bar created a foreseeable risk of harm, thus retaining the causal link between the actions of the premises owner in designing and operating the self-service facility and the injured invitee. If the plaintiff can prove that the salad bar operated by the defendant was designed, constructed or maintained in such a way as to give rise to

business establishment results in increased profits rather than lower prices. I disagree. One need only compare the price of one gallon of gasoline at a self-service station with that of a full-service station to recognize the fallacy of this assumption. Nevertheless, if a fairer rule can be crafted that results in a store owner being held liable for operating or constructing a particularly hazardous business operation, I agree that we should adopt it.

[2] Because self-service retail operations have graced this country for almost one century; see E. Halper, "Supermarket Use and Exclusive Clauses," 30 Hofstra L. Rev. 297, 386 (2001) ("[t]he seeds of the shift from service-oriented grocery sales to self-service groceries were planted when Clarence Saunders opened the first Piggly Wiggly store . . . in Memphis . . . for business in 1916"); and this state since at least prior to World War II; see, e.g., *Nocera* v. *Great Atlantic & Pacific Tea Co.*, 15 Conn. Sup. 174, 174 (1947) (describing defendant's "self-service store" at which "[p]ackaged articles are displayed on shelves and customers take what they want from the shelves and take them to the cashier, who collects the purchase price and delivers the articles purchased to the customer"); *Bernhard* v. *Great Atlantic & Pacific Tea Co.*, 10 Conn. Sup. 9, 10 (1941) (action for implied warranties of fitness and merchantable quality arising from purchase of corn at defendant's "self-service store"); *Alfonso* v. *Stavnitsky*, 8 Conn. Sup. 34, 37 (1940) (discussing "self-service chain store"); consumers are familiar with all aspects of this type of operation, including the generalized risks associated with using such a facility. Therefore, any new rule that this court adopts should not automatically include all self-service operations but only those that are improperly designed or operated.

a foreseeable risk that a hazardous condition was likely to result, and if the plaintiff also can prove that she fell as a result of slipping on the piece of lettuce, a jury reasonably could conclude that the salad bar, rather than the lettuce, was the proximate cause of her injury. It necessarily follows that the defendant, by the mere fact that it owns, operates and maintains the hazardous mode of operation, had actual notice of the defect. In other words, by placing a salad bar in a commercial setting and inviting customers to serve themselves, the defendant may be charged with the knowledge that foreseeable risks, including the possibility that food will fall to the floor, were inherent in the mode of operation.

The evidence required to prove that a particular mode of operation gave rise to a foreseeable risk of injury should be readily available to an injured party and, in this case, such evidence was adduced at trial. Specifically, the evidence established that the salad bar had no railings and that the four inch ledge was too narrow to accommodate trays or containers, thus requiring customers to hold their containers over the floor while serving themselves. The salad bar itself was located in the middle of a linoleum or tile floor and was surrounded on both sides by a narrow floor runner, approximately two to three feet wide. Furthermore, the store manager testified that the floor area surrounding the salad bar was "precarious" because customers regularly caused items from the salad bar to fall to the floor. In these circumstances, a fact finder reasonably could have concluded that, because the contents of the defendant's salad bar regularly fell to the floor as a result of poor construction, the salad bar created a dangerous condition of which the defendant had actual notice.

The rule that the majority announces results in a mode of operation analysis that is consistent with principles of common-law negligence. In allowing a plaintiff to prove that the hazardous condition that caused her

injuries was the specific mode of operation of the defendant's business, the rule alleviates any concerns regarding the difficulty in producing "time-on-the-floor" evidence. Moreover, if a plaintiff is unable to demonstrate that the defendant's business gave rise to a foreseeable risk of injury, he or she may elect to prove actual or constructive notice of the condition that caused her injury by reverting to "time-on-the-floor" evidence or other evidentiary means. Finally, the mode of operation rule that the majority adopts and traditional premises liability law require proof of essentially the same elements. The rule therefore results in some degree of certainty and consistency for both consumers and business owners. Accordingly, I agree with the majority that the judgment of the trial court should be reversed and that the case should be remanded for a new trial.