### MARK TUITE *v.* THE HOSPITAL OF CENTRAL CONNECTICUT*

Superior Court, Judicial District of New Britain
File No. CV-10-6003208-S

---

* Affirmed. *Tuite* v. *Hospital of Central Connecticut,* 141 Conn. App. 573, 61 A.3d 1187 (2013).

Memorandum filed December 8, 2011

*Proceedings*

*Dennis G. Hersh* and *Cynthia I. Crockett*, for the plaintiff.

*Albert G. Danker, Jr.*, for the defendant.

ALANDER, J. The plaintiff, Mark Tuite, has brought suit seeking damages against the defendant, The Hospital of Central Connecticut, for injuries he allegedly received when he slipped on a drop of olive oil on the floor of the hospital cafeteria while retrieving food from the salad bar. The plaintiff asserts that the defendant was negligent in its operation of the salad bar resulting in an injury to the plaintiff's wrist. The defendant disputes the plaintiff's claims.

The case was tried to the court over two days, November 16 and 17, 2011. Based on the evidence presented,

I find the following facts. On January 31, 2008, the plaintiff was working at the hospital for a vendor as a computer programmer. He had been working at the hospital for the past four months and he usually ate lunch at the hospital cafeteria. At approximately 12:15 p.m. that day, he went to the hospital cafeteria for lunch. The plaintiff proceeded to the salad bar at the cafeteria and began preparing a salad. He placed some lettuce into a plastic container and, as he turned to go around the end of the salad bar, he slipped but did not fall. The plaintiff's left elbow struck the corner of the tray counter and he grabbed the counter with the fingers of his left hand, twisting his wrist. After his slip, the plaintiff looked down at the floor and saw a two inch smear of a clear oily liquid which appeared to be olive oil. The plaintiff characterized the spill as a mere "drop" of oil.

A cafeteria employee, Alice Green, observed the plaintiff holding his elbow and inquired if he was injured. The plaintiff responded that he had slipped and injured his elbow. Green looked down at the floor in the area where the plaintiff was standing and did not observe any foreign matter on the floor. Immediately prior to speaking with the plaintiff, Green had checked the floor around the salad bar and had not seen any spillage. The plaintiff was directed to Steven Coco, who was the Manager of Cash Operations and the person responsible for the daily supervision of the cafeteria, to complete an incident report. At the time, the plaintiff complained only of soreness in his forearm and elbow. Days later, the plaintiff began experiencing a sharp pain in his left wrist. The plaintiff was subsequently diagnosed with a scaphoid fracture in his left wrist.

The hospital cafeteria is open to the public and is utilized by patients and hospital employees as well. The salad bar is a self-service operation located in the center of the cafeteria. It contains lettuces, vegetables and

various other food products related to the preparation of salads, including numerous salad dressings. The salad dressings, including olive oil, are located at one end of the salad bar and are contained in pour bottles with flip tops. The salad bar is considered a "state-of-the-art" salad bar designed to minimize spillage. The food products are refrigerated at the salad bar, rather than kept cold using ice, thereby minimizing the risk of water leaking onto the floor. The food products are also recessed within the four corners of the salad bar so that spillage is likely to fall into the confines of the salad bar rather than onto the floor. The tray counter is constructed of solid material, rather than tubing, to prevent food items from falling to the floor. Notwithstanding its design, food items do occasionally fall onto the floor from the salad bar, primarily from dropped containers or trays. Although the floor surrounding the salad bar was a tile floor, it was not a smooth glazed surface. Rather, the floor was designed to be a "non-slip" surface.

One cafeteria employee is primarily responsible for stocking the food items at the salad bar and for keeping the salad bar and the surrounding floor clean and free of debris. On January 31, 2008, the day of the incident, that employee was Alice Green. Green's duties were to stock, inspect and clean three areas of the cafeteria: the salad bar, the beverage station and the condiment station. During lunch hours, Green performed a continuous circuit of each of the three areas. It took her approximately ten to fifteen minutes to complete one circuit, whereupon she would repeat another circuit of the three areas. Green's duties included monitoring the floor for spills and cleaning up any spills immediately upon observing them. Two supervisors, Steven Coco and Sal Crispo, were also on duty that day. Their responsibilities included monitoring the floor of the cafeteria, including the floor around the salad bar, during the

lunch hours. After the cafeteria closed at the end of each day, the entire cafeteria floor was swept, mopped and cleaned by maintenance staff.

The plaintiff seeks to hold the defendant liable for his injury pursuant to the mode of operation rule of premises liability.[1] Under the mode of operation rule, a "business invitee who is injured by a dangerous condition on the premises may recover without proof that the business had actual or constructive notice of that condition if the business' chosen mode of operation creates a foreseeable risk that the condition regularly will occur and the business fails to take reasonable measures to discover and remove it." *Kelly* v. *Stop & Shop, Inc.*, 281 Conn. 768, 769–70, 918 A.2d 249 (2007). "[A] plaintiff establishes a prima facie case of negligence upon presentation of evidence that the mode of operation of the defendant's business gives rise to a foreseeable risk of injury to customers and that the plaintiff's injury was proximately caused by an accident within the zone of risk. The defendant may rebut the plaintiff's evidence by producing evidence that it exercised reasonable care under the circumstances. . . . [T]he ultimate burden of persuasion to prove negligence—in other words, that the defendant failed to take reasonable steps to address a known hazard—remains with the plaintiff. . . . [The plaintiff] bears the burden of persuading the jury that the defendant acted unreasonably." (Citations omitted; internal quotation marks omitted.) Id., 791–92. The mode of operation rule in Connecticut "does not apply generally to all accidents caused by transitory hazards in self-service retail establishments, but rather, only to those accidents that result

---

[1] Although the plaintiff's complaint also arguably alleges that the defendant had actual or constructive notice of the spill of oil on the floor near the salad bar, no evidence was submitted to support such a claim. There was no evidence that the defendant's employees actually saw the oil at any point and no evidence as to the length of time that the oil was on the floor prior to the accident.

from particular hazards that occur regularly, or are inherently foreseeable, due to some specific method of operation employed on the premises." *Fisher* v. *Big Y Foods, Inc.,* 298 Conn. 414, 423, 3 A.3d 919 (2010).

Applying this law to the facts of this case, the plaintiff has failed to establish that the operation of the defendant's salad bar created a hazard of spilled oil that was regularly occurring or inherently foreseeable. The plaintiff also has not established that the defendant failed to take reasonable steps to discover and remove any known hazards. In short, the plaintiff failed to prove that the salad bar was hazardous or that the defendant acted unreasonably under the circumstances.[2]

The plaintiff failed to establish that there existed a foreseeable risk that oil or salad dressing from the salad bar would regularly fall to the floor. The evidence merely established that food products from dropped trays or containers would occasionally end up on the floor. The plaintiff himself testified that, although he had regularly visited the cafeteria for lunch during the prior four months, he had never previously seen oil on the cafeteria floor. See id., 426 n.18 (under the mode of operation rule, the plaintiff who slipped on salad

---

[2] The plaintiff relies on *Kelly* v. *Stop & Shop, Inc.,* supra, 281 Conn. 768, for his claim that the defendant should be found liable under the mode of operation rule. *Kelly* is readily distinguishable from the circumstances surrounding the plaintiff's slip at the defendant's salad bar. The Supreme Court, in *Kelly* v. *Stop & Shop,* supra, 793–94, held that the plaintiff, who slipped and fell on a piece of lettuce on the floor near a salad bar, had adduced sufficient evidence to establish a prima facie case of negligence by the defendant. The evidence submitted in *Kelly* established that (1) the area around the salad bar was " 'precarious' " and customers regularly caused items from the salad bar to fall to the floor below; (2) the defendant's failure to follow its own guidelines regarding the completion of a maintenance report and an accident report permitted an inference that the area in question had not been swept, cleaned or inspected; and (3) no employees were in the vicinity of the salad bar when the plaintiff was serving herself at the salad bar. Id. No such evidence of the defendant's negligence was offered in this case.

material must establish that the defendant's method of operating its salad bar created a foreseeable risk that salad material regularly would be dropped to the floor). There is also no evidence that the oil on the floor resulted from a dropped container or tray.

The evidence also established that the defendant had taken reasonable steps to prevent such spills and to discover and remove such spills should they occur. The defendant utilized a "state of the art" salad bar designed to prevent items from spilling outside the confines of the salad bar itself. The salad dressings were contained in pour bottles with caps to reduce accidental spills. An employee was assigned to monitor the salad bar with responsibility for inspecting the salad bar and surrounding floor for spills and promptly cleaning any spills. In fact, at the time of the plaintiff's slip, that employee was stationed at the salad bar and had recently checked the floor for spills.

In light of the above, the plaintiff has not satisfied his burden of proving that the defendant failed to take reasonable steps to address a known hazard. Accordingly, judgment shall enter in favor of the defendant.