MEMORANDUM OF DECISION
GUERNSEY, C.J.
The instant action presents the Court with a situation where the evidence of the injury to the Plaintiff is direct and essentially unquestioned, but evidence of the cause of the fall that produced the Plaintiffs injury is entirely circumstantial. “A plaintiff, however, may sustain his burden of proof by circumstantial evidence,” Terminal Taxi Company, Et Al. v. Flynn, 156 Conn. 313, 316, 240 A.2d 881 (1968), if the inference is “not only logical and reasonable but also strong enough that it can be found to be more probable than not.” Colin C. Tait & Eliot D. Prescott, TAIT’S HANDBOOK OF CONNECTICUT EVIDENCE (4th Ed. 2008) § 3.5.1.
I
Factual Background
The evidence presented can be summarized as follows. The Plaintiff, then 69 *260 years of age and a resident of Roslyn, New York, together with her husband Carl, her grandson Zack and a friend of Zack’s, went to the Mohegan Sun on March 8, 2008 so that she and her husband could take the kids to the Bon Jovi concert that night. They arrived about noon, and checked into their room at the Mohegan Sun Hotel, intending to stay the night after the concert.
After checking in, they decided to go to lunch at a restaurant in the Casino, Fide-lia’s. When they arrived, the restaurant was very busy, with almost every table taken. They were seated in the rear of the restaurant, near the kitchen.[1] After lunch, they exited in a way best described as counterclockwise, proceeding along a path that the Plaintiff described as tiled, although the area under the outside booths surrounding this path was carpeted. The photographs and testimony of the former manager of Fidelia’s indicated that the same was a terrazzo floor.
By the time the Plaintiffs party reached that part of the path by the “last” booth (i.e. nearest the entrance) Zack and his friend were in front, speaking with Plaintiffs husband Carl, and the Plaintiff was walking behind them. Carl Lowenstein testified that he heard a noise, turned around, and saw that his wife had fallen and that her right wrist was badly deformed. No one in the Plaintiffs party (or anyone other than the Plaintiff, as far as the evidence indicated) witnessed the actual fall.
The fall occurred in the vicinity of “Station Area A”, which is accessed only by servers or other employees of the Defendant and which stores condiments, including mustard, ketchup, A-l steak sauce, soy sauce, olive oil, etc. for use by servers.[2] These are kept in closed containers; sauces prepared by the kitchen would more likely be in open ramekins. The kitchen is located at the back of the restaurant, and servers would carry trays to tables and booths located in the left front of the restaurant along the same path used by the Plaintiffs party in exiting the restaurant. Fidelia’s does serve a breakfast buffet, but the buffet had ceased several hours before the accident. An all day breakfast menu is served, but well before the time of the accident all delivery of food and beverages to patrons was by way of full service by employees of the Defendant to patrons seated at booths or tables.[3]
Carl Lowenstein testified that his immediate concern was the obvious, severe injury to his wife’s hand. Neither the Plaintiff nor her husband observed any substance on the tiled area where she fell. Medical response personnel arrived quickly and placed the Plaintiff on a gurney, at which time Carl Lowenstein observed a large, wet, greasy or oily spot on the sole of her right shoe. The shoes she was wearing at the time of the fall have not been preserved.
The Plaintiff testified credibly that as she was walking, she felt something under her foot that made it go out suddenly, causing her to slip and fall down hard on *261 j the “tile” floor. By the time the Defendant’s Security Supervisor arrived on the (scene, the Plaintiff was already being transported to Backus Hospital. It does not appear that any search for defects was i conducted, and it is unknown whether the three photographs attached to the incident report show the actual point on the terraz-Wl zo floor where the Plaintiff fell.
The Plaintiff was taken by Mohegan Ambulance to William W. Backus Hospital, where X-Rays revealed a “highly commi-nuted impacted fracture of the distal radius, with radial epiphyseal fractures distributed in a burst pattern. The carpus [was] laterally displaced relative to the forearm, without AP malalignment.” At the hospital, the Plaintiff was given a splint cast, and after discharge was actually able to attend the Bon Jovi concert that night. After returning home to Roslyn, on March 10, 2008 she consulted with Dr. Jay S. Simoncic, a hand specialist, whose diagnosis was a comminuted distal radius fracture. Dr. Simoncic was of the opinion that the Plaintiff required open reduction and internal or external fixation. This surgery was performed at Glen Cove Hospital on March 18, 2008 under general anesthesia. During the procedure the attempted closed reduction was carried out, but was not successful due to the multiple bone fragments and amount of comminution of the fracture.
As a result, an open approach to the volar aspect of the wrist was performed. Significant comminution and bone loss was noted. Reduction was carried out but there was difficulty maintaining the reduction using a plate for internal fixation, so additional external fixation was carried out, affording better reduction of the fracture fragments. When seen again by Dr. Simoncic on March 26, 2008, there was mild swelling noted but the external fixator was in good position. Examination revealed decreased range of motion about the digits. Dr. Simoncic’s diagnosis at that point was status post right wrist external fixation and internal fixation of distal radius fracture. The Plaintiff was started on occupational therapy for range of motion of the digits. The last notation introduced from Dr. Simoncic (July 31, 2008) indicated the Plaintiff was feeling a little bit stiff with regards to her fingers, but otherwise doing quite well and was to continue occupational therapy. Although no percentage disability was assigned, the Plaintiff has scarring from the surgical site and is unable completely to close her fingers together, which condition she demonstrated to the Court during trial. The evidence established that the total medical, surgical and rehabilitative expense arising out of this fall was $27,231.57, which certainly appears to be reasonable in light of the severity of the injury.[4]
II
ANALYSIS
The burden of persuasion in a civil case of this nature is well established. As described by Prof. Tait, “a party satisfies his or her burden of persuasion if the evidence, considered fairly and impartially, induces in the mind of the trier a reasonable belief that it is more probably than otherwise that the fact or issue is true.” (citations omitted) TAIT & PRESCOTT, op, cit, § 3.5.1. “It is not necessary that the proof negate all other possibilities or that it reach the degree of certainty that excludes every other reasonable conclusion.” Id.
*262 In the instant case, the Plaintiff has established that it is more probable than not that she slipped on a substance on the terrazzo floor. Her testimony was credible[5], and the evidence presented, including photographs accompanying the incident report, does not establish the presence of any type of tripping hazard. As for the source of the substance responsible for the Plaintiff slipping on the terrazzo floor, the Plaintiff has established that any self-service buffet had ended hours earlier, that it was not common for patrons to carry their own food and drink through the restaurant, and that those carrying food, drink, condiments, water, etc. over the terrazzo floor where Plaintiff fell were more likely than not the Defendant’s employees.
As the Connecticut Appellate Court has observed, the drawing of inferences is based on a “rough assessment of probabilities”:
“An inference is a factual conclusion that can rationally be drawn from other facts. If fact A rationally supports the conclusion that fact B is also true, then B may be inferred from A. The process of drawing inferences based on a rough assessment of probabilities is what makes indirect or circumstantial evidence relevant at trial. If the inference (fact B from fact A) is strong enough, then fact A is relevant to prove fact B.”
Curran v. Kroll, 118 Conn.App. 401, 409, 984 A.2d 763 (2009), quoting 1 C. Fishman, Jones on Evidence (1992) § 4:1, pp. 299-300,[6] In short, the Plaintiff has established that she slipped on a liquid substance of some sort, on a terrazzo floor, in a busy restaurant, and that the only persons transporting such substances in the area where she fell were employees of the Defendant. The Plaintiff has proved that it is more probable than not that the proximate cause of her fall was a liquid substance of some sort that dropped onto the terrazzo floor while being transported by an agent of the Defendant.[7]
The instant case therefore involves neither the “mode of operation” theory of liability[8] nor issues of constructive notice, inasmuch as “proof of notice is not required because the defendant is presumed to be on notice of the conduct of its own employees”. Kelly v. Stop and Shop, Inc., 281 Conn. 768, 785 fn. 6, 918 A.2d 249 (2007).[9] As for Defendant’s First Special *263 Defense, that of comparative negligence, the Defendant has failed to prove any negligence on the part of the Plaintiff; if anything, the photographs accompanying Defendant’s Incident Report tend to show that the defect was not one that the Plaintiff could have observed.[10]
The injuries suffered by the Plaintiff were both painful and severe. The fracture was of such severity and so commi-nuted that closed reduction was not possible, open reduction with internal fixation failed adequately to deal with the fracture, and additional external fixation was required. F or purposes of this decision it is irrelevant that no percentage disability was assigned;[11] the Plaintiff demonstrated to the Court the limitations with which she has been left.
The Court finds that fair, just and reasonable compensation for the non-economic damages suffered by the Plaintiff in this case is $75,000.00, and that her actual damages (or economic loss) total $27,231.57. In accordance with MTC § 3-251(a)(3), the award of non-economic damages is reduced to $54,463.14, for a total award of $81,694.71. Collateral source issues, if any, shall be raised pursuant to MRCP § 47(c).
Judgment shall enter in favor of the Plaintiff in the amount of $ 81,694.71.

. Testimony at trial indicated the restaurant seating was for the most part in concentric circles. The table at which the Plaintiff’s party was dining was described as being at about the 12:00 o'clock position as seen by one standing at the front entrance.

. See list in Plaintiff's Exhibit 3 "SSA 3— Condiments.”

.Fidelia's discourages, but does not completely prohibit, patrons from bringing in their own food and drink; when they arise, these issues are handled on a case by case basis. Testimony established that it was not typical for a patron to bring in food or drink, and no evidence was introduced that any patron had done so prior to Plaintiffs fall.

. The Defendant has not introduced any evidence directed to the reasonableness or medical necessity of the treatment rendered.

. Although her husband testified credibly as to the observation of a discoloration on the sole of Plaintiffs shoe, the same does not factor into the Court’s finding, inasmuch as such a discoloration could have occurred at any time prior to the accident.

. The Connecticut Appellate Court continues ‘‘[m]uch has been written about the jury's ability to draw inferences, but, as explained by Professor McCormick, "in few areas of the law have so many words been spoken by the courts with so little conviction.” 2 C. McCormick, Evidence (5th Ed. 1999) § 338, p. 418.

. It is interesting to note that, as the Connecticut Supreme and Appellate Courts have held, "Connecticut does not subscribe to the oft-repeated rule that an inference cannot be based on an inference. Successive inferences are permissible if justified by the facts Curran v. Kroll, 118 Conn.App. 401, 410, 984 A.2d 763 (2009), quoting C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 4.3.1. In the instant case, however, the two operative inferences, that the Plaintiff slipped on a spilled substance and that such substance was dropped while being transported by an agent of the Defendant, arise from different sets of facts.

. This theory of liability was made inapplicable to claims brought under the Mohegan Torts Code by the 2007 amendment to the definition of "negligence" contained in MTC § 3-245.

. Although counsel for the Defendant strongly argued that the same was not proven, it was conceded in argument that if the Defendant’s employees accidentally put something on the floor, the Defendant was responsible.

. Plaintiff's Second Special Defense, relating to collateral source payments, should never have been pleaded; such pleading is prohibited under both Mohegan Rules of Civil Procedure and Superior Court rules. See MRCP § 23(f); Conn. Prac. Bk. § 10-78.

. It is not dear to what extent New York surgeons regularly assign such ratings.