******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

REBECCA BISSON *v.* WAL-MART STORES, INC.
(AC 39965)

DiPentima, C. J., and Sheldon and Prescott, Js.

*Syllabus*

The plaintiff, a business invitee of the defendant company, brought this premises liability action against the defendant, seeking to recover damages for personal injuries she sustained when she allegedly slipped and fell on an accumulation of water while walking in the main aisle of the defendant's store. The plaintiff alleged that her fall was caused by, inter alia, the defendant's negligence and carelessness in creating the alleged dangerous and hazardous condition on the floor, and failing to properly inspect its premises to detect and remedy that condition. The defendant filed a motion for summary judgment on the ground that there was no factual basis on which a reasonable jury could find that the defendant had actual or constructive notice of the alleged defect. In support, the defendant attached an excerpt from the plaintiff's deposition and an affidavit of its employee, C. The plaintiff claimed that a genuine issue of material fact existed as to whether the defendant had constructive notice of the alleged defect and, in support of her objection, submitted a copy of C's deposition and a copy of a video recording of the events leading up to, and including, the plaintiff's fall. The trial court granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. On appeal, the plaintiff claimed, inter alia, that the trial court improperly concluded that she failed to present evidence demonstrating the existence of a disputed factual issue as to the matter of constructive notice. Specifically, she claimed that C's deposition contained contradictions regarding whether she actually performed a safety sweep of the main aisle prior to the plaintiff's fall and that C's deposition testimony regarding the time that had elapsed from her safety sweep of the main aisle to the plaintiff's fall was inconsistent. *Held*:

1. The trial court properly concluded that the defendant met its initial burden of establishing the absence of a genuine issue of material fact with respect to the constructive notice element of a premises liability action for a business invitee; the defendant's evidence, particularly C's affidavit, established a forty second maximum time period between the creation of the defect and the plaintiff's fall, and that brief period of time in which the defect could have existed did not create a genuine issue of material fact with respect to the constructive notice element, as the defendant, acting through its employees' exercise of due care, did not have sufficient time to discover and remedy the alleged defect, a puddle of water on the floor of its store.

2. The trial court properly concluded that the plaintiff failed to present evidence demonstrating the existence of a disputed factual issue as to the constructive notice element: the plaintiff's attempt to inject a question of untruthfulness into C's deposition regarding whether she had performed a safety sweep was unsupported by the record, as the plaintiff's argument failed to appreciate the distinction between two different types of safety sweeps performed at the defendant's store, the plaintiff's claim that the surveillance video showed that C never looked down or directly in the area of the plaintiff's fall amounted to nothing more than speculation on behalf of the plaintiff because it was not possible to discern where C's gaze was directed when she performed her safety sweep due to the low quality of the video recording, and although C's deposition testimony regarding the time that had elapsed from her safety sweep of the main aisle to the plaintiff's fall included isolated references to both a five and ten minute time frame, C's deposition, when read as a whole, demonstrated that the plaintiff's fall occurred in the area where, approximately forty seconds prior, C had conducted a safety sweep, and that time period was confirmed by the video recording; moreover, the plaintiff's claim that the presence of snow on the ground on the day of the plaintiff's fall increased the defendant's duty to keep its premises in a reasonably safe condition was inadequately briefed and not reviewable.

Argued March 12—officially released September 11, 2018

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Ansonia-Milford, where the court, *Tyma, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon; thereafter, the court denied the plaintiff's motion to reargue and for reconsideration, and the plaintiff appealed to this court. *Affirmed.*

*Ryan K. Miller*, for the appellant (plaintiff).

*Michael P. Kenney*, with whom, on the brief, was *Kate J. Boucher*, for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. In this premises liability action, the plaintiff, Rebecca Bisson, challenges the summary judgment rendered in favor of the defendant, Wal-Mart Stores, Inc.,[1] in which the trial court determined that (1) the defendant met its burden of establishing that no genuine issue of material fact existed regarding constructive notice of the defect alleged and (2) that the plaintiff's own evidence did not establish the existence of a genuine issue of material fact. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our consideration of the plaintiff's appeal. The plaintiff commenced this premises liability action on November 13, 2013. In the amended complaint, dated March 4, 2014, the plaintiff alleged that on February 12, 2013, she entered the defendant's store in Naugatuck with her aunt. While walking in the main aisle of the store, the plaintiff slipped and fell on an accumulation of water. The plaintiff suffered immediate pain in her left knee, and an employee of the defendant quickly offered her assistance.

The plaintiff claimed that her fall was caused by the defendant's negligence and carelessness in creating the dangerous and hazardous condition on the floor, failing to remedy the condition, failing to warn the plaintiff of the condition, failing to properly inspect its premises to detect and correct the condition and failing to exercise reasonable care under the circumstances. The plaintiff also claimed to have suffered a variety of injuries in the fall as a result of the defendant's negligence and carelessness.[2] The defendant filed an answer, denying the allegations of negligence and carelessness, and raised the special defense of comparative negligence.

On July 6, 2016, the defendant filed a motion for summary judgment. Specifically, it argued that "[t]he plaintiff's negligence claim against [the defendant] fails as a matter of law because there is no factual basis upon which a reasonable jury could find that [the defendant], through its agents, servants and/or employees, had actual or constructive notice of the alleged defect at issue." Attached to the defendant's memorandum of law in support of the motion for summary judgment were an excerpt of the plaintiff's deposition and an affidavit of Jennifer Card, an employee of the defendant, who had offered assistance to the plaintiff after her fall. Card's affidavit stated: "[The plaintiff's] fall occurred in the exact area where I had performed a safety sweep less than one minute ([forty] seconds) prior . . . [and] I did not observe any water, or other liquid, on the area of the floor where [the plaintiff] fell during my safety sweep . . . ."

On August 18, 2016, the plaintiff filed an objection to the defendant's motion for summary judgment. She

argued that "contradictory pieces of evidence . . . bring about a material fact as to the length of time the water, which caused the [p]laintiff to slip and fall, existed." Specifically, the plaintiff argued that Card's affidavit, which she labeled as "self-serving," was contradicted by Card's deposition. Additionally, the plaintiff contended that a surveillance video, provided by the defendant, disproved Card's statements contained in her affidavit and deposition.[3]

On September 16, 2016, the defendant replied to the plaintiff's objection. The defendant noted in its reply memorandum that the plaintiff had failed to produce the surveillance video for the trial court's inspection and, therefore, that video was not part of the record before the court on the summary judgment proceeding. It did note, however, that if the surveillance video were to be considered, it would support Card's deposition testimony and her affidavit.

On September 30, 2016, the plaintiff filed a surreply memorandum, in which she argued that "[t]he surveillance video depicts a different version of what is stated in . . . Card's deposition and affidavit. The [d]efendant's counsel gave this video to the undersigned, without any objection or disagreement, several months ago. It is hereby enclosed for the court's review as an addendum." Attached to the surreply was an affidavit from the plaintiff's counsel stating that he had submitted a USB flash drive to the court containing a true copy of the February 12, 2013 surveillance video from the defendant's Naugatuck store that the defendant's counsel previously had mailed to him on August 28, 2015.

The court, *Tyma*, *J.*, held a hearing on the motion for summary judgment on November 21, 2016. At the start of the hearing, the court noted that it had watched the surveillance video twice in chambers with both counsel present. The defendant's counsel argued that the video demonstrated that the claimed defect, water on the floor, had existed for no more than one minute, and more likely forty-two seconds. Specifically, the defendant relied on Card's affidavit and the surveillance video to support its contention that she had scanned the area of the plaintiff's fall approximately forty seconds prior to that event and did not see any water on the floor. Such a minimal time period could not constitute a sufficient length of time for constructive notice of the defect, according to the defendant's counsel. Further, the defendant's counsel also directed the trial court to our decision in *Hellamns* v. *Yale-New Haven Hospital, Inc.*, 147 Conn. App. 405, 82 A.3d 677 (2013), cert. granted, 311 Conn. 918, 85 A.3d 652 (2014) (appeal withdrawn May 9, 2014), in support of the defendant's argument for summary judgment.

The plaintiff's counsel challenged the defendant's claim that there was no genuine issue as to the duration of the defect. Specifically, he argued that, given the fact

that there was snow on the ground outside on the day of the plaintiff's fall in the store, a genuine issue of material fact existed as to whether the defendant had "taken reasonable steps to make sure that [its] invitees, [its] customers, were safe under the circumstances." The plaintiff's counsel also claimed that inconsistencies between Card's affidavit and her deposition regarding the nature and details of her "safety sweep" precluded the granting of summary judgment in favor of the defendant.

The court iterated that it had watched the surveillance video twice and commented that it showed Card walking down one of the main aisles of the defendant's store.[4] Specifically, it noted that Card traversed the area where the plaintiff's accident would occur. The court then stated: "And approximately forty to forty-two or forty-three seconds later, we see the plaintiff come and slip and fall in the spot where there's allegedly water. So we do know from the surveillance video that you got that it's consistent with [Card's] deposition testimony, that was about forty seconds." The plaintiff's counsel subsequently claimed that the video supported the claim that a reasonable person could conclude that water had been on the floor for a longer period of time.

The court then rendered an oral decision[5] granting the defendant's motion for summary judgment. It expressly based its decision on Card's affidavit, her deposition testimony and the surveillance video.[6] It concluded that the defendant had met its initial burden of demonstrating that there was no genuine issue of material fact that the defendant did not have constructive notice of the water on the floor.[7] It then determined that the plaintiff had failed to meet her burden of offering contrary evidence demonstrating the existence of a genuine issue of material fact.[8] The court subsequently denied the plaintiff's motion for reconsideration or reargument. This appeal followed.

We begin with our standard of review and the relevant legal principles. The fundamental purpose of summary judgment is to prevent unnecessary trials. *Stuart* v. *Freiberg*, 316 Conn. 809, 822, 116 A.3d 1195 (2015). "The standard by which we review a trial court's decision to grant a motion for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact *together*

*with the evidence disclosing the existence of such an issue. . . . It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. . . . Mere assertions of fact, whether contained in a complaint or in a brief, are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . .*

"As a general rule, then, [w]hen a motion for summary judgment is filed and supported by affidavits and other documents, an adverse party, by affidavit or as otherwise provided by . . . [the rules of practice], must set forth specific facts showing that there is a genuine issue for trial, and if he does not so respond, summary judgment shall be entered against him. . . . Requiring the nonmovant to produce such evidence does not shift the burden of proof. Rather, it ensures that the nonmovant has not raised a specious issue for the sole purpose of forcing the case to trial. . . .

"More specifically, [t]he party opposing a motion for summary judgment must present evidence that demonstrates the existence of some disputed factual issue . . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents. . . . The opposing party to a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . The existence of the genuine issue of material fact must be demonstrated by counter-affidavits and concrete evidence. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Bruno* v. *Whipple*, 162 Conn. App. 186, 213–15, 130 A.3d 899 (2015), cert. denied, 321 Conn. 901, 138 A.3d 280 (2016); see also Practice Book § 17-49.

The parties do not dispute that the complaint set forth a claim of negligence based upon premises liability, that the plaintiff was a business invitee[9] and that this was a constructive notice case. Accordingly, the following relevant legal principles apply to this action. "To hold the defendant liable for her personal injuries . . . the plaintiff must prove (1) the existence of a defect, (2) that the defendant knew or in the exercise of reasonable care should have known about the defect and (3) that such defect had existed for such a length of time that the [defendant] should, in the exercise of reasonable care, have discovered it in time to remedy it." (Internal quotation marks omitted.) *Palmieri* v. *Stop & Shop*

*Cos.*, 103 Conn. App. 121, 123–24, 927 A.2d 371 (2007); see also *Martin* v. *Stop & Shop Supermaket Cos.*, 70 Conn. App. 250, 251, 796 A.2d 1277 (2002).

Our Supreme Court has explained that "[f]or [a] plaintiff to recover for the breach of a duty owed to [him] as [a business] invitee, it [is] incumbent upon [him] to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused [his injury] or constructive notice of it. . . . [T]he notice, whether actual or constructive, must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it. . . . In the absence of allegations and proof of any facts that would give rise to an enhanced duty . . . [a] defendant is held to the duty of protecting its business invitees from known, foreseeable dangers. . . .

"*Accordingly, business owners do not breach their duty to invitees by failing to remedy a danger unless they had actual or constructive notice of that danger. To defeat a motion for summary judgment in a case based on allegedly defective conditions, the plaintiff has the burden of offering evidence from which a jury reasonably could conclude that the defendant had notice of the condition and failed to take reasonable steps to remedy the condition after such notice.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 116–17, 49 A.3d 951 (2012); see also *Kelly* v. *Stop & Shop, Inc.*, 281 Conn. 768, 776, 918 A.2d 249 (2007); see generally *Colombo* v. *Stop & Shop Supermarket Co.*, 67 Conn. App. 62, 64, 787 A.2d 5 (2001) ("The law concerning notice in this type of case is clear. The plaintiff bore the burden of proffering some evidence, either direct or circumstantial, from which the jury could infer that the defect she allegedly encountered existed for a length of time sufficient to put the defendant on actual or constructive notice of its existence."), cert. denied, 259 Conn. 912, 789 A.2d 993 (2002).

"The controlling question in deciding whether the defendant had constructive notice of the defective condition is whether the condition had existed for such a length of time that the defendants' employees should, in the exercise of due care, have, discovered it in time to have remedied it. . . . What constitutes a reasonable length of time within which the defendant should have learned of the defect, how that knowledge should have been acquired, and the time within which, thereafter, the defect should have been remedied are matters to be determined in light of the particular circumstances of each case. The nature of the business and the location of the defective condition would be factors in this determination. To a considerable degree each case must be decided on its own circumstances." (Internal quotation

marks omitted.) *Hellamns* v. *Yale-New Haven Hospital, Inc.*, supra, 147 Conn. App. 408–409; see *Considine* v. *Waterbury*, 279 Conn. 830, 870, 905 A.2d 70 (2006); see also *Gulycz* v. *Stop & Shop Cos.*, 29 Conn. App. 519, 521, 615 A.2d 1087 (whether defendant had constructive notice of condition causing defect turns on whether condition existed for length of time sufficient for defendant's employees, in exercise of due care, to discover defect in time to have remedied it), cert. denied, 224 Conn. 923, 618 A.2d 527 (1992). Nevertheless, as we will discuss in greater detail, a defect lasting under a minute has been held to be, as a matter of law, insufficient for a defendant to have discovered and remedied it, and thus fatal to a premises liability action. See, e.g., *James* v. *Valley-Shore Y.M.C.A., Inc.*, 125 Conn. App. 174, 183, 6 A.3d 1199 (2010) (no evidence that allegedly defective condition existed for such length of time that defendant's employees should have discovered it in exercise of due care and remedied it and, therefore, defendant entitled to summary judgment), cert. denied, 300 Conn. 916, 13 A.3d 1103 (2011).

First, the plaintiff argues that the court improperly concluded that the defendant met its initial burden of establishing the absence of a genuine issue of material fact. Specifically, she contends that Card's affidavit[10] was insufficient to demonstrate that no genuine issues of material fact existed.[11] We disagree.

The following additional facts are necessary for our analysis. The defendant moved for summary judgment on July 6, 2016. It attached a memorandum of law, a portion of the plaintiff's deposition, dated August 6, 2015, and an affidavit from Card dated August 12, 2015. In her deposition, the plaintiff had stated that there was snow on the ground on February 12, 2013, and that the liquid she had slipped on looked like water, was clear and did not have carriage track marks going through it. She also noted that Card had approached her after the fall and inquired if the plaintiff was okay or wanted to speak with a manager.

Card's affidavit set forth the following: Card was working on February 12, 2013; she witnessed the plaintiff's slip and fall; the plaintiff's fall occurred in the "exact area" that Card had performed a "safety sweep less than one minute ([forty] seconds) prior"; during the "safety sweep" Card had not observed any liquid, water or otherwise, where the plaintiff's fall occurred; after the plaintiff's fall, Card noticed, for the first time, a small puddle of water at the site of the plaintiff's fall; and Card believed that the water had originated from snow melting off the boots of several children who had been standing in that area. The affidavit emphasized that "[t]he water was not on the floor for more than [forty] seconds before the fall."

We emphasize that the defendant, as the movant for summary judgment, bore the burden of establishing the

nonexistence of any genuine issue of material fact and that it was entitled to judgment as a matter of law under the relevant principles of our premises liability law. See *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 319–20, 77 A.3d 726 (2013); see also *Capasso* v. *Christmann*, 163 Conn. App. 248, 258–59, 135 A.3d 733 (2016).

The defendant submitted evidence that the liquid on the floor in the main aisle of the store at the site of the plaintiff's fall had been there for no more than forty seconds following Card's safety sweep.[12] Specifically, Card's affidavit established this time frame. She averred that she had performed a safety sweep in the "exact area" of the plaintiff's fall forty seconds later. At the time of her sweep, Card observed no liquid on the floor. Card further posited that the water on the floor had come from snow melting off the boots of four to five children. Additionally, as further support for this sequence of events, the defendant had produced testimony from the plaintiff's deposition that the liquid on the floor was clear and did not have any carriage marks running through it. The unsullied nature of the spill supported the time frame claimed by the defendant.[13]

The trial court then considered whether, under our case law, a genuine issue of material fact existed with respect to the issue of constructive notice. We iterate that "[t]he controlling question in deciding whether the defendants had constructive notice of the defective condition is whether the condition existed for such a length of time that the defendants should, in the exercise of reasonable care, have discovered it in time to remedy it. . . . What constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of a case." (Citation omitted; internal quotation marks omitted.) *Considine* v. *Waterbury*, supra, 279 Conn. 870; see also *Hellamns* v. *Yale-New Haven Hospital, Inc.*, supra, 147 Conn. App. 408–409. In the absence of evidence that the claimed defect existed for such a length of time that the defendant, through exercise of due care by its employees, should have discovered and remedied it, we have affirmed the granting of summary judgment in favor of the defendant. See *James* v. *Valley-Shore Y.M.C.A., Inc.*, supra, 125 Conn. App. 179–83.

We agree with the trial court that the defendant satisfied its initial burden of demonstrating that there was no genuine issue of material fact with respect to the element of constructive notice.[14] The defendant's evidence, particularly Card's affidavit, established a forty second maximum time period between the creation of the defect and the plaintiff's fall. Under our case law, a forty second window constitutes an insufficient period of time for a business owner to discover and remedy a small puddle of water on the floor in the exercise of due care.

For example, in *White* v. *E & F Construction Co.*, 151 Conn. 110, 111–12, 193 A.2d 716 (1963), the plaintiff, an employee of a tenant in the apartment house owned by the defendant, removed laundry from an outdoor clothesline due to rain. After placing the clothes into a basket, the plaintiff proceeded to the basement stairs. Id., 112. She slipped on the wet landing and fell to the basement floor. Id. "About two minutes before the plaintiff fell, her employer had noticed that the steps were wet by reason of rain which was coming through the open doorway. . . . Therefore, the crucial question is whether the water had been there for such a length of time that the defendant should, in the exercise of due care, have discovered it in time to have removed it." (Citations omitted.) Id., 112–13.

The trial court directed a verdict for the defendant following the presentation of evidence. Id., 111. In affirming the judgment of the trial court, our Supreme Court stated: "The evidence reveals no more than that the condition which caused the plaintiff to fall had been present for about two minutes before the time she entered the building. This evidence would not support a finding that the condition had existed for a sufficient length of time to charge the defendant with constructive notice of it." Id., 113–14.

More recently, this court considered whether a plaintiff had established that a defendant had constructive notice in *Hellamns* v. *Yale-New Haven Hospital, Inc.*, supra, 147 Conn. App. 411–14.[15] In that case, the plaintiff slipped and fell on a puddle of water while walking in the hallway of a medical building owned by the defendant. Id., 407. "A janitor, pushing a cart with cleaning material and a warning sign, walked past the spot where the water had accumulated just prior to the plaintiff falling." Id. Following the trial, the court, acting as the fact finder, rendered judgment in favor of the plaintiff. Id.

On appeal, we agreed with the defendant that the plaintiff had failed to establish that it had notice of the defect. Id., 411. We noted that the only evidence regarding the issue of notice was the plaintiff's testimony that "a janitor walked past the puddle of water just before she fell." Id., 412. We concluded that this evidence was insufficient to support the finding that the defendant had notice of the defect and time to remedy it. Id., 413. "First, the plaintiff did not present the janitor, or any other employee . . . to establish for the court that the janitor actually saw the puddle of water before the accident. . . . *Second, the plaintiff's testimony established that a janitor passed the puddle of water only seconds before the plaintiff fell. Evidence establishing that the defective condition existed a few seconds before the accident is insufficient to establish that the defendant had constructive notice of that defect. . . .*

"Third, the plaintiff failed to establish that notice could be imputed to the defendant because the plaintiff did not present any evidence to establish that cleaning the specific hallway where the accident occurred was within the janitor's scope of employment." (Citations omitted; emphasis added.) Id.

For these reasons, we concluded in *Hellamns* that the trial court's finding that the defendant had notice of the defect was clearly erroneous and remanded the case with direction to render judgment for the defendant. Id., 414; see also *Correa* v. *Westfield America, Inc.*, Superior Court, judicial district of Middlesex, Docket No. CV-13-6010576-S (October 2, 2014) (defendant property owner entitled to summary judgment on plaintiff's premises liability action where undisputed evidence demonstrated spill existed for only two minutes prior to fall); *Mason* v. *Wal-Mart Stores, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-10-6013281-S (May 1, 2012) (53 Conn. L. Rptr. 882, 883) (rendering judgment for defendant where plaintiff fell one minute after water had accumulated on floor from mulch bag and noting that "[i]t would be unreasonable . . . to find that the defendant has constructive notice of a hazardous condition that had been in existence for but one minute . . . [and that] [t]he defendant's store is large, and such minute-to-minute monitoring would be unfeasible").

In summary, the defendant submitted evidence that the defective condition in this case, a puddle of water, existed for, at most, forty seconds prior to the plaintiff's fall. Our Supreme Court has cautioned that "[e]vidence which goes no farther than to show the presence of a slippery foreign substance does not warrant an inference of constructive notice to the defendant." (Internal quotation marks omitted.) *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 777. Additionally, we are mindful that, under our law, business owners are not insurers of their customers' safety. Id., 790; *Hellamns* v. *Yale-New Haven Hospital, Inc.*, supra, 147 Conn. App. 410. We disagree with the plaintiff's statement that the defendant must offer "evidence of exactly how long the alleged defect was there . . . ."[16] Rather, to prevail on its motion for summary judgment, the defendant had to establish that the time period in which the defect could have existed was of such a minimal duration that its employees could not have been expected to discover and remedy it in the exercise of due care. *James* v. *Valley-Shore Y.M.C.A., Inc.*, supra, 125 Conn. App. 183.

Consistent with this case law, the brief period of time in which the defect could have existed here does not create a genuine issue of material fact with respect to the constructive notice element of a premises liability action for a business invitee. Stated differently, under these facts and circumstances, the defendant, acting through its employee's exercise of due care, did not

have enough time to discover and remedy a puddle of water on the floor of its store. Therefore, the defendant met its initial burden of establishing that it was entitled to summary judgment. *Romprey* v. *Safeco Ins. Co. of America*, supra, 310 Conn. 320.

Next, the plaintiff argues that the court improperly concluded that she failed to present evidence demonstrating the existence of a disputed factual issue as to the matter of notice. See, e.g., *Kurisoo* v. *Ziegler*, 174 Conn. App. 462, 468–69, 166 A.3d 75 (2017). Specifically, she contends that the evidence attached to her objection to the motion for summary judgment and her surreply established the existence of genuine issues of material fact so as to warrant the denial of the motion for summary judgment. We disagree.

The following additional facts will facilitate our discussion. The plaintiff filed her objection to the defendant's motion for summary judgment on August 18, 2016. In addition to her memorandum of law, the plaintiff filed the transcript of Card's deposition, dated August 3, 2016, and Card's August 12, 2015 affidavit, which had been attached to the defendant's memorandum. In the memorandum of law, the plaintiff referred to the video recording of the events leading up to, and including, her fall on February 12, 2013. The plaintiff included a copy of the video recording as an addendum to her surreply, dated September 30, 2016.

During her deposition, Card stated that employees of the defendant are required to perform safety sweeps any time they walk within the store. This obligation involves "picking up any items . . . picking up anything that is on [the store's] white tiles, putting it . . . back on the shelves." Card explained that, as a result of this requirement, she looked for potential hazards present on the floor any time she walked within the store. In contrast to this type of safety sweep, which was to be done at all times, the defendant's employees also conducted paged safety sweeps. At certain times, an overhead page informed the employees to stop their work, "walk the perimeter of [their] department, and . . . make sure everything is safe for the customers and [employees]." Card noted that she was "observant at all times."

In her deposition, Card stated that on February 12, 2013, although there had been no page, she had performed a safety sweep of the area where the plaintiff fell. Card specifically indicated that she had been looking down at the floor, and that there was "no chance" she was looking in the opposite direction, at her cell phone, or at a customer when she passed that particular spot. Although she initially claimed to have spoken with a customer for ten minutes, she immediately reconsidered her response and stated that it "was only like five minutes." After being reminded of the video recording, Card stated that she had performed the safety sweep

forty seconds prior to the plaintiff's fall. After iterating that it was forty seconds, Card noted that it could have been "[m]aybe under a minute." Later, Card indicated that the water which had caused the plaintiff to fall was not present during her safety sweep. After a further colloquy with the plaintiff's counsel, Card resolutely indicated that the fall occurred forty seconds after her safety sweep.

On appeal, the plaintiff appears to argue that Card's deposition contains contradictions regarding whether she "truly" performed a safety sweep prior to the plaintiff's fall.[17] We do not agree. As noted, Card stated in her deposition that the defendant's employees were required to perform safety sweeps whenever they were walking within the store. In addition, Card described a paged safety sweep, when employees check the perimeters of their assigned departments for any hazards following an overhead page. The plaintiff's argument fails to appreciate the two types of safety sweeps performed at the defendant's store. Although Card stated that she had not performed a paged safety sweep in the main aisle prior to the plaintiff's fall, her statement was consistent with her testimony that safety sweeps are to be done any time an employee walks in the store. The plaintiff's attempt to inject a question of untruthfulness or incredibility into Card's deposition regarding whether she had performed a safety sweep is unsupported by the record.

The plaintiff next argues that the surveillance video shows that Card "never looked down or directly in [the] area" of the plaintiff's fall. She further maintains this "fact" contradicts Card's deposition testimony and affidavit, and, therefore, creates a genuine issue of material fact. We disagree. We have reviewed the surveillance video recording and disagree with the plaintiff's contention that it depicts precisely where Card was looking at the time of her safety sweep in the main aisle just prior to the plaintiff's fall. Due to the presence of other shoppers, and the quality of the video, it is not possible to discern where Card's gaze was directed. This argument, therefore, amounts to nothing more than speculation on behalf of the plaintiff, which has no place in appellate review. See *Rafalko* v. *University of New Haven*, 129 Conn. App. 44, 54, 19 A.3d 215 (2011) (speculation and conjecture have no place in appellate review).

The plaintiff also argues that Card's deposition testimony regarding the time that had elapsed from her safety sweep of the main aisle to the plaintiff's fall was inconsistent, varying from forty seconds to five minutes to ten minutes. As a result, the plaintiff contends that a genuine issue of material fact exists.[18] We disagree. Despite her isolated references to a ten minute time frame, and then to a five minute time frame, Card's deposition, read as a whole, demonstrates her view that

the plaintiff's fall occurred in the area where, approximately forty seconds prior, she had conducted a safety sweep.

Additionally, this forty second time period is confirmed by the video recording. When a court is presented with such evidence in deciding a motion for summary judgment, it should view the facts in the light depicted by the recording. *Scott* v. *Harris*, 550 U.S. 372, 378–81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007);[19] see also *Alvarez* v. *Building & Land Technology Corp.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-13-6017699-S (February 7, 2018) (video recording used to determine that there was no material issue of fact); *Carter* v. *Board of Education*, Superior Court, judicial district of New London, Docket No. CV-14-6022709-S (October 20, 2015) (citing *Scott* v. *Harris*, supra, 380, and noting that when opposing parties tell two different contradictory stories, one of which is contradicted by record so that no reasonable jury could believe it, court should not adopt that version of facts); *Sipes* v. *Serrano*, Superior Court, judicial district of Tolland, Docket No. CV-07-5001483-S (July 25, 2007) (43 Conn. L. Rptr. 832, 833) (same).

Finally, the plaintiff argues that, due to the presence of snow on the ground on the day of her fall, the defendant "should have taken steps to remedy the fact that the snow caused a heightened dangerous condition to the floors, where countless numbers of its invitees were walking. If there is snow on the ground, it is foreseeable that the snow would constitute a known and foreseeable danger." To the extent that the plaintiff suggests that the presence of snow on the ground increased the defendant's duty to keep its premises in a reasonably safe condition, we conclude that this argument is inadequately briefed. "We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (Internal quotation marks omitted.) *Cadle Co.* v. *Ogalin*, 175 Conn. App. 1, 8, 167 A.3d 402, cert. denied, 327 Conn. 930, 171 A.3d 454 (2017).

Having considered and rejected the plaintiff's sundry arguments, we conclude that the court properly determined that the defendant met its initial burden of pro-

ducing evidence that there was no genuine issue of material fact with respect to the constructive notice element of the plaintiff's claim. Additionally, the plaintiff failed to set forth evidence demonstrating a genuine issue of material fact regarding that issue. Accordingly, the court properly granted the defendant's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff named "Wal-Mart Stores, Inc." as the defendant in her initial complaint. Thereafter, the plaintiff amended the complaint to include the proper legal name of the defendant, that is, "Wal-Mart Stores East I, L.P."

[2] Specifically, the plaintiff alleged various injuries to her left knee, heart palpitations, stomach pains and nausea, difficulty sleeping, headaches and physical and emotional pain and suffering.

[3] The plaintiff attached Card's entire deposition and affidavit to her memorandum of law opposing the defendant's motion for summary judgment. The plaintiff did not, however, include a copy of the video with her memorandum of law.

[4] Specifically, the court stated: "We watched the video and we timed it. So, the video shows that this store employee, Ms. Card, is walking down a Wal-Mart, in one of the main aisles in Wal-Mart, and there's people milling about. And she walks, we watched it twice, she walks by the place where allegedly water is. And approximately forty to forty-two or forty-three seconds later, we see the plaintiff come and slip and fall in the spot where there's allegedly water. So, we do know from the surveillance video that you got that it's consistent with her deposition testimony, that was about forty seconds. . . . It was forty seconds, forty-two, forty-three. It's less than a minute, no doubt about that." Later, the court noted that the video established a time frame of approximately forty seconds from the time that Card walked in the main aisle to the plaintiff's fall at that location.

[5] The court, in lieu of issuing a written memorandum of decision, signed a copy of the transcript on December 5, 2016. See Practice Book § 64-1 (a).

[6] As noted, the court and the parties referred to the surveillance video at the November 21, 2016 hearing regarding the defendant's motion for summary judgment. On appeal, the parties discussed this video in their respective appellate briefs. At oral argument before this court, however, the defendant's counsel commented that the surveillance video was not part of the appellate record.

Subsequent to oral argument, we issued an order, sua sponte, instructing the trial court and counsel for the parties to rectify the record and to provide this court with a copy of the February 12, 2013 surveillance video on a USB flash drive. On May 7, 2018, the parties filed, and the trial court accepted, a stipulation that the attached USB flash drive contained a copy of the requested video. We have reviewed the surveillance video provided by the parties.

[7] Specifically, the court stated: "So based upon the evidence, particularly, the affidavit of . . . Card, and the surveillance video that I've seen . . . the defendant . . . has met its burden, initial burden of proof showing that there's no genuine issue of material fact that [the defendant] did not have constructive notice of this water on the floor. This is not an actual defect, actual notice case."

[8] Specifically, the court stated: "The plaintiff has not met [her] burden to offer contrary evidence from which a jury reasonably can conclude that [the defendant] had notice of the water on the floor and failed to take reasonable steps to remedy it after the notice. The plaintiff's entire argument, in view of the evidence, is based upon the plaintiff, in essence, making [the defendant] an insurer of the safety of all its business invitees on the premises. There's absolutely no evidence as to how long the water existed on the floor prior to the plaintiff's fall. And to find otherwise would be to inject speculation into the case."

[9] "A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." (Internal quotation marks omitted.) *Gargano* v. *Azpiri*, 110 Conn. App. 502, 506, 955 A.2d 593 (2008). As a result of this status, the defendant owed the plaintiff the duty to keep its premises in a reasonably safe condition. *Baptiste* v. *Better Val-U Supermarket*, Inc., 262

Conn. 135, 140, 811 A.2d 687 (2002); *Gulycz* v. *Stop & Shop Cos.*, 29 Conn. App. 519, 521, 615 A.2d 1087, cert. denied, 224 Conn. 923, 618 A.2d 527 (1992).

[10] The plaintiff describes Card's affidavit as "self-serving." We disagree with this description. Card is not a party to this action; she is an employee of the defendant. Additionally, employees of businesses frequently provide such affidavits in preparation for litigation. See, e.g., *Webster Bank* v. *Flanagan*, 51 Conn. App. 733, 749, 725 A.2d 975 (1999). Additionally, Card made a sworn statement before a notary public, subjecting her to penalty for giving false information. See id. Finally, we note that Card's affidavit comports with the requirements of Practice Book § 17-46, and the plaintiff failed to file a motion to strike her affidavit. See, e.g., *Doe* v. *West Hartford*, 328 Conn. 172, 178, 177 A.3d 1128 (2018).

[11] The plaintiff also contends that the court "flipped the burden of proof, [reading] the facts in the light most favorable to the [d]efendant, the moving party, rather than in the light most favorable to [the] [p]laintiff." The plaintiff offers no support for the bald assertion that the court improperly viewed the facts in a light most favorable to the defendant. Absent evidence to the contrary, we presume that the court acted properly. *LeSueur* v. *LeSueur*, 172 Conn. App. 767, 785–86, 162 A.3d 32 (2017); see also *Magsig* v. *Magsig*, 183 Conn. App. 182, 196,     A.3d     (2018) (this court will presume trial court acted properly in performance of its duties). Accordingly, we reject this meritless contention.

[12] At the hearing before the trial court, defense counsel relied on Card's affidavit, Card's deposition testimony and the video recording from the store, to support the argument that the water had been on the floor for less than one minute.

[13] But see *Colombo* v. *Stop & Shop Supermarket Co.*, supra, 67 Conn. App. 62–65 (trial court properly directed defendant's verdict where plaintiff's only evidence as to length of time that milk was on floor was fact that it was dirty, and this court noted that to conclude otherwise would permit conclusion regarding time of defect's existence solely on conjecture and speculation).

[14] During the hearing on the motion for summary judgment, the plaintiff's counsel argued that the defendant had not provided enough evidence regarding the question of constructive notice. The trial court disagreed: "[The defendant has] shown plenty of evidence. My question is now the burden shifts to you. You have to come forth with what evidence do you have that the water existed for a sufficient length of time such that the defendant should have been on notice of that and remedied it. What is it? The burden is on you now. [The defendant has] met [its] burden." The plaintiff's counsel disagreed that the defendant had met its initial burden of submitting evidence that there was no genuine issue of material fact as to the element of constructive notice. The court responded: "But assume [the defendant] has because I'm telling you [it] has."

[15] The plaintiff contends that the trial court improperly relied on our decision in *Hellamns* due to the procedural posture of that case. We acknowledge that that appeal stemmed from a judgment for the plaintiff following a court trial. *Hellamns* v. *Yale-New Haven Hospital, Inc.*, supra, 147 Conn. App. 407. In that case, we agreed with the defendant that the trial court had applied a standard of care contrary to law and that the plaintiff had failed to establish that the defendant had notice of the defect. Id., 407–14. For these reasons, we reversed the judgment of the trial court and remanded the case with direction to render judgment for the defendant. Id., 414.

Despite the procedural differences between *Hellamns* and the present case, we conclude that the guidance that the former provides regarding the matter of constructive notice informs our analysis in the latter. Specifically, the principle that "[e]vidence establishing that the defective condition existed a few seconds before the accident is insufficient to establish that the defendant had constructive notice of that defect" applies whether at the summary judgment stage or a judgment for a party subsequent to trial. Id., 413. Accordingly, we disagree with the plaintiff that the court erred in relying on *Hellamns*.

[16] We have held that if a plaintiff fails to present any evidence as to the duration of the existence of a defect, the court properly may dismiss the action for failing to make out a prima facie case. *Gulycz* v. *Stop & Shop Cos.*, supra, 29 Conn. App. 521–23; see also *McCrorey* v. *Heilpern*, 170 Conn. 220, 221–22, 365 A.2d 1057 (1976) (Supreme Court reversed judgment in favor of plaintiff and remanded with direction to render judgment for defendant where plaintiff produced no evidence regarding length of time hole in floor outside plaintiff's apartment had existed); *Drible* v. *Village Improvement Co.*, 123 Conn. 20, 23–24, 192 A. 308 (1937) (trial court properly set

aside jury verdict and rendered judgment for defendant where plaintiff provided no evidence as to length of time snow and ice had been on steps of building where plaintiff fell).

[17] Specifically, the plaintiff argues in her brief that "[t]he fact that . . . Card says she was on a safety sweep, because she is always on a safety sweep during her entire shift, but it was not a called safety sweep by Wal-Mart, brings up a big question as to the truthfulness and credibility of those statements, which should be weighed by the trier of fact."

[18] In its oral decision, the trial court acknowledged that Card's deposition testimony regarding the time between her safety sweep and the plaintiff's fall got "a little bit muddied."

[19] In *Scott* v. *Harris*, supra, 550 U.S. 374–75, the petitioner, a Georgia county police deputy, employed a certain technique to stop the respondent, an individual who had led law enforcement on a high speed pursuit for nearly ten minutes. As a result, the respondent crashed his vehicle and was rendered a quadriplegic. Id., 375. The respondent filed an excessive force action, and the petitioner moved for summary judgment on the basis of qualified immunity. Id., 375–76. The United States District Court for the Northern District of Georgia denied the petitioner's motion, and the United States Court of Appeals for the Eleventh Circuit affirmed that judgment. Id., 376.

In reversing the judgment of the Court of Appeals, the United States Supreme Court first noted that the parties had presented vastly different versions of the events that resulted in the respondent's injuries. Id., 378–79. It then stated that, generally, a court was obligated to view the facts in the light most favorable to the nonmoving party, the respondent in this case. Id., 378. "There is, however, an added wrinkle in this case: existence in the record of a videotape capturing the events in question. There are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened. The videotape quite clearly contradicts the version of the story told by respondent and adopted by the Court of Appeals." Id.

The United States Supreme Court further noted that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape." Id., 380–81.

_____